**People of the State of Illinois, Plaintiff-Appellee, v. Sheadrich Gilyard, Defendant-Appellant.**

**Gen. No. 53,231.**

First District, First Division.

April 27, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas Holum, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial defendant was found guilty of the offenses of armed robbery and aggravated battery. The court sentenced him to concurrent terms of ten to twenty years for armed robbery and five to ten for aggravated battery.

On appeal defendant contends that (1) the trial court erroneously denied his motion to suppress certain evidence; (2) prejudicial error was committed in several evidentiary rulings of the trial court; (3) the complaining witness was allowed to arouse the sympathies of the jury by displaying his physical disabilities; (4) improper

argument to the jury by the prosecutor was allowed; (5) it was improper for the jury to begin deliberation before the cause was delivered to them; and (6) the sentences were improper.

On January 10, 1967, at approximately 8:30 p. m., a man (subsequently identified as defendant) entered a drugstore three times and asked for a certain narcotic. On each of the three occasions the complainant, Oscar Norman, an apprentice pharmacist, told him that they did not have any of that medication. After the third refusal defendant pulled out a small automatic pistol. Norman knocked the pistol from defendant's hand and reached into his own hip pocket for his own pistol (a .38 Smith & Wesson snub-nosed, chrome-plated revolver). During a struggle between Norman and the defendant for Norman's pistol, a shot was fired from it. An accomplice of defendant took Norman's pistol and struck him on the forehead. Both assailants then fled from the store. Norman had blood all over his forehead, his coat was torn and his trousers were completely torn off, and his pistol was missing. Norman called his brother and the police and went to a hospital where he received treatment for his injuries.

At the trial Norman positively identified the defendant as the man who entered his store and robbed him. He testified that defendant was wearing a pair of green gloves, a checkered gray hat, a red suede jacket, a scarf tied around his head, and his hair was processed. A gray checkered hat and a light green glove were identified by Norman as those worn by his assailant and were admitted into evidence.

Norman further testified that on February 3, 1967, he saw defendant inside Smitty's Lounge at 3713 Roosevelt Road. He made contact with the police and entered the lounge with them. He pointed out defendant to the police, and defendant was arrested and taken to the

police station. At that time defendant was wearing a red suede jacket and his hair was still processed.

A customer, Mrs. Mary McCallum, testified that she was in the pharmacy during the robbery. When she first entered she was four or five feet away from the defendant, and he was wrestling with Norman. She started to leave when another man stopped her and said it was a holdup and told her to walk to the back of the store, which she did. She was within two and one-half feet of the defendant, and she continued to look at him and stepped into a little washroom. From the open doorway she saw the other man go over to Norman and defendant and "come down on Mr. Norman's head." The two men then ran out. Norman was "bloody all over." She positively identified the defendant as the assailant and said that he was wearing a grayish hat and a reddish brown jacket.

Other witnesses for the State included Police Officers James Ball, Edward Owczarek and Walter J. Zamolewicz. Officer Ball testified that on January 11, 1967, he had seen the defendant on the passenger side of a car. A woman named Barbara Price was sitting in the front seat between defendant and the driver. A pistol was taken from the purse of Barbara Price, which he inventoried together with four bullets and the serial number of the pistol. He was shown People's Exhibit 3, a .38 Smith & Wesson snub-nosed, chrome revolver, and identified it as the same revolver taken from Mrs. Price. He said, "The serial number on the butt of the gun and the serial number on my inventory report is the same." At the trial Norman was shown this revolver (Exhibit 3) for identification, and he testified that the revolver was identical in every respect to that of the weapon taken from him on January 10, 1967. He said, "Definitely. It is my gun." He stated that before it was discharged during the robbery, the gun had contained five bullets.

Officer Owczarek testified that on February 3, 1967, he had occasion to be in Smitty's Tavern with Oscar Norman, and that Norman pointed out defendant from approximately twenty-five males present. The defendant was wearing a reddish brown suede jacket and had processed hair. The defendant was taken to the 11th District police station.

Officer Zamolewicz testified that on February 3, 1967, he interviewed the defendant and Norman in the presence of each other at the 11th District police station. He informed defendant that he was being charged with armed robbery of a drugstore on January 10, 1967, and after warning defendant of his constitutional rights, the defendant stated, "I didn't do it. I was in Springfield, Illinois, and I didn't leave there until the 12th or 13th of January."

Witnesses for the defense included the defendant and Herbert H. Harris. Defendant testified in his own behalf that he had never robbed or struck Norman on the head. Also, he didn't recall if he was in Chicago on January 10, 1967. Herbert H. Harris, a gunsmith who had been a distributor for Smith & Wesson for thirty years, testified that the Smith & Wesson revolver was identical to a million other revolvers that had been made, and the only way to tell one revolver from another was by the serial number.

Initially considered is defendant's contention that Norman's Smith & Wesson revolver (State's Exhibit 3) should not have been admitted into evidence. He asserts that the introduction of the pistol into evidence violated the Fourth Amendment prohibition against unreasonable searches and seizures. The record shows that at the hearing of a pretrial motion to suppress the pistol as evidence, defendant was the sole witness. He testified that on January 11, 1967, one day after the alleged robbery, he was riding as a passenger along with Barbara Price

and another man, in a car driven by McKinley Shumate. Shumate made an improper turn and was stopped by two uniformed policemen. The policemen asked Shumate for identification and his driver's license, and when Shumate was unable to produce a driver's license, the officers ordered the male passengers out of the car and conducted a "pat down." One of the officers leaned over the front seat and opened Barbara Price's purse, looked in, and found a .38 caliber Smith & Wesson special chrome-plated, snub-nosed revolver, containing four cartridges. No weapons were found on defendant or the other passengers. No one tried to strike the police officers or offered resistance to them. Barbara Price, Shumate and defendant were brought to a police station and charged with disorderly conduct. After defendant's testimony and the argument by counsel, the trial court denied the motion to suppress.

Defendant argues that the police were not justified in conducting a search when making an arrest for a traffic violation. Also, even if they were justified in searching the driver they were not justified in searching the passengers. Authorities cited include People v. Cassell, 101 Ill App2d 279, 243 NE2d 363 (1968); People v. Watkins, 19 Ill2d 11, 166 NE2d 433 (1960); and United States v. Di Re, 332 US 581 (1947).

■ We agree with the State that the instant search and seizure were reasonable and proper. The failure of Shumate to produce his driver's license at the request of the arresting officers was a circumstance sufficient to warrant an officer's reasonable belief that he may be dealing with a criminal rather than a mere traffic violator. Under such circumstances the search of the person arrested and those who were passengers in the car was proper and justified for the purpose of protecting the arresting officers from attack. See People v. Turner, 91 Ill App2d 436, 448, 235 NE2d 317 (1968). We find no error here.

102

Defendant further contends that the Smith & Wesson pistol was erroneously received into evidence even though it was neither found in defendant's possession nor adequately identified. Defendant states, "It was no different from a million other pistols of the same type, and there is no reasonable basis to believe that it was the pistol taken in the robbery. . . . Thus the only way to identify one particular pistol, of the million which have been made, is by the serial number. The complainant did not know the serial number of the pistol taken by the robber. He had no means of identifying it." Defendant's authorities include People v. Smith, 25 Ill2d 428, 185 NE2d 150 (1962); People v. Evertson, 310 Ill 397, 141 NE 696 (1923).

The State argues that "even where stolen property is devoid of distinctive characteristics it will be admissible where sufficient circumstances connect it to the defendant and the crime, where a witness identifies the property as similar in appearance to the property stolen." People v. Tilden, 50 Ill App2d 354, 200 NE2d 33 (1964); People v. Mikka, 7 Ill2d 454, 131 NE2d 79 (1955); People v. Jones, 22 Ill2d 592, 177 NE2d 112 (1961).

In People v. Tilden, the defendant contended that two eyewitnesses to a murder could not sufficiently identify the murder weapon since they could not testify as to the make or model of the gun. It was held that where the witnesses had "sufficient exposure" to the weapon, they could identify it by appearance alone, and that this was sufficient to warrant the introduction of the weapon in evidence.

In People v. Mikka, a witness to a robbery described a gun as "very similar" to one held by the defendant at the time of the robbery, and this was held to be sufficient identification. There the court said (p 460):

"Mikka contends that the court improperly admitted the gun in evidence because it was not found on his

person. There is no merit to this contention. According to the testimony of Miller, the gun was found in the car which Mikka was driving and was, therefore, sufficiently connected with him to warrant its introduction in evidence."

In People v. Jones, it is said (p 600) :

"Thus the question is not whether the gun was in the possession of the defendant, but rather whether the gun had been sufficiently connected with the crime and the defendant to make it relevant as evidence. Here an eyewitness to the crime testified that he saw defendant fire a gun at Chevers and described the gun as a long-barrelled chrome-plated gun. People's exhibit No. 3 was such a gun. The witness was shown People's exhibit No. 3 and testified that it looked like the gun he had seen in defendant's hands. The gun in question was found under the front seat of the automobile in which defendant was riding at the time he was arrested. Under these circumstances, we think the gun was sufficiently connected with the defendant and with the crime to make it relevant as evidence, and the trial judge did not err in allowing it to be admitted into evidence."

██ In the instant case the pistol was positively identified by the complaining witness, Norman, as his own, whereas defendant never claimed it was his nor did Barbara Price claim it as hers. The pistol that was found contained four cartridges, and Norman testified that his pistol contained five cartridges before it was fired. Also, the pistol was found in a car in which defendant was riding. We think the pistol was sufficiently connected with the defendant and with the offense to make it relevant as evidence, and it was not error in allowing it to be admitted into evidence.

104

Next considered is defendant's contention that "a hat and glove were admitted in evidence, even though they had no relevance to the guilt or innocence of the defendant." Defendant argues that although the complainant, Norman, testified that these items of clothing had been worn by the robber, the testimony does not reveal where they were found, and "this made their admission into evidence especially prejudicial, since the jury may have assumed that they were found in the defendant's possession. . . . The error was magnified when the jurors discovered, while examining the items, that the glove contained a watch which had not been offered in evidence. It was never explained how the watch happened to be inside the glove. . . . To parade before the jury a hat, glove, and watch, without revealing where these objects came from, could only tend to confuse and bewilder the jurors."

■ On this point the State argues that both Norman and Mrs. McCallum testified that defendant wore a gray checkered hat during the robbery, and that Norman positively identified both items as articles worn by the defendant. The State asserts that "on cross-examination, the complaining witness was asked whether these objects had been left in his drug store, and in response to this question, Oscar Norman said that the police had found them after he had left. Significantly, there was no objection to this answer and defense counsel evidently thought it responsive to his question." We agree with the State that the foregoing was sufficient to establish a foundation for the admission of the hat and glove.

■ As to the watch, there is nothing in the record to show how it got into the glove, and it was not introduced into evidence. Although this occurrence was most unusual, the record does not demonstrate any prejudice to defendant. In fact, we think it could be reasonably argued as being prejudicial to the State's case. See Peo-

ple v. Daniels, 354 Ill 600, 188 NE 886 (1933); People v. Stephens, 297 Ill 91, 130 NE 459 (1921). We think the relevance of the hat and glove was established and they were properly admitted into evidence.

Next considered is defendant's contention that "the jury learned that the defendant had exercised his right to remain silent, thus violating the defendant's Fifth Amendment rights." This charge is based on the testimony of Officer Zamolewicz, who testified that after the arrest defendant denied taking part in the robbery and said he had been in Springfield until several days after the occurrence. The following then took place:

> Prosecutor: "Did you ask him any further questions at this time?"
>
> Witness: "He refused to make any more statements."
>
> Defense Counsel: "Object, Judge, not responsive."
>
> The Court: "That objection is sustained. It is not responsive. Would you ask the question again, please, and only give a 'Yes' or 'No' answer.

Defendant argues that even though the trial court sustained an objection to the testimony, the prejudicial effect of the testimony was still left on the jury. Defendant's authorities on this point include Miranda v. Arizona, 384 US 436 (1966); People v. Lewerenz, 24 Ill2d 295, 181 NE2d 99 (1962); and People v. Roth, 19 Ill2d 195, 166 NE2d 578 (1960). In Miranda v. Arizona, it was stated (p 468):

> "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

106

■ The State argues that the statement complained of was in response to a proper question asked by the Assistant State's Attorney, and "the defendant cannot complain that the prosecutor's conduct prejudiced his right to a fair trial where the witness' testimony was not responsive to a relevant question, especially where the testimony was immediately stricken by the trial court." Authorities cited are People v. Kirkwood, 17 Ill2d 23, 160 NE2d 766 (1959); and People v. Sampson, 1 Ill2d 399, 115 NE2d 627 (1953). After examining the authorities and the record, we conclude that no prejudice accrued to defendant by the jury hearing the statement complained of, and it could not have reasonably affected the result of the trial in view of the overwhelming evidence of defendant's guilt. See People v. Novak, 84 Ill App2d 276, 278, 228 NE2d 139 (1967).

Defendant's next contention is that "the complainant was allowed to play on the sympathy of the jury by advertising his medical symptoms." Defendant states that the complaining witness had suffered from polio and walked with a limp, and that the jury was allowed to observe him exhibit his deformity while walking to the witness stand. Also, while testifying, the witness placed a medicine bottle on the shelf in front of the witness chair and at one point drank from it. Defendant's motion to exclude the jury from the courtroom at this time and his later motion for a mistrial were denied. Defendant's authorities include People v. Wynekoop, 359 Ill 124, 194 NE 276 (1934); and People v. Nickolopoulos, 25 Ill2d 451, 185 NE2d 209 (1962).

■ We find no merit in defendant's contention. A witness should not be shielded from the jury because he suffers from an infirmity not related to the offense charged.

Next considered is defendant's contention that he was denied a fair trial because the court allowed prejudicial comment during the State's closing argument to the jury.

He complains of the prosecutor's charge that the defense counsel was attempting to free defendant by trickery, and that the error was aggravated when the prosecutor based his comments on his three years' personal experience, thus commenting on personal knowledge which was not in evidence. Authorities include People v. Freedman, 4 Ill2d 414, 123 NE2d 317 (1954); and People v. Polenik, 407 Ill 337, 95 NE2d 414 (1950).

■ We have examined the questioned remarks. Although we consider these remarks improper, we have concluded defendant was not prejudiced by them. Also, the jury was instructed they should consider only the statements of witnesses as evidence and not the comments of the attorneys.

■ We find no merit in defendant's contention that the State should have called Janice Franklin, the pharmacy employee who was present at the scene of the occurrence and was not called to testify by the State. In People v. Jones, 30 Ill2d 186, 195 NE2d 698 (1964), it is said (p 190):

> "The State is not obliged to produce every witness to a crime and the failure to produce a witness does not give rise to the presumption that the testimony of that witness would be unfavorable to the prosecution."

■ Defendant also maintains that the conflicting and inconsistent statements of the complainant were a factor in casting doubt on his credibility. We find no prejudicial error to defendant. The discrepancies in the testimony of the various witnesses, including complainant, were argued to the jury for its evaluation as to the credibility of the witnesses.

Next considered is defendant's contention that it was improper for the jury to begin deliberating before the cause was submitted to them. The record shows that

after the introduction of all the evidence and final argument by both the prosecution and the defense, the trial court decided that it would not allow the State or defense exhibits to be taken into the jury room for fear that they might either confuse or prejudice the jurors during deliberation. The court stated that since the exhibits had been admitted, the jurors would be better informed if they were allowed to see them at first hand and instructed the bailiff to pass the exhibits through the jury box for the jurors' inspection. After the jurors had reviewed the exhibits, the court stated: "I am sure there has been no discussion among you regarding exhibits. I think, after all of this time, you would have betrayed my instructions which have been so clear, that you are to keep all of what you observed here to yourselves until you go into that deliberation room."

At the request of defense counsel, the court asked each juror who had discussed the exhibits while in the jury box to rise and give the nature of the discussion. Seven jurors rose and, on questioning, it was shown that they exchanged remarks during the examination of the exhibits, but each stated that his partiality remained unaffected. Defendant's motion for a mistrial was denied.

Defendant argues that it was improper for the jury to discuss the evidence before the case was submitted to them. Authorities include Winebrenner v. United States, 147 F2d 322 (1945) ; People v. Rohwedder, 78 Ill App2d 211, 223 NE2d 1 (1967) ; and People v. DeStefano, 64 Ill App2d 368, 212 NE2d 368 (1965).

 The motion for a mistrial was addressed to the sound discretion of the trial court. In People v. Malmenato, 14 Ill2d 52, 150 NE2d 806 (1958), it is said (p 63) :

"The exercise of that discretion is always subject to review and its abuse will constitute reversible error. . . . The question presented is whether the jurors,

or any of them, have been influenced or prejudiced to such an extent that they would not and could not be fair and impartial, and each case must be determined on its own peculiar facts and circumstances. . . . The statement of a juror that he has read but was not influenced by the article is not conclusive, and due consideration must be given to the nature and character of the statements themselves."

And at page 65:

"To warrant a reversal, it must reasonably appear that the jurors, or at least some of them, have been influenced or prejudiced to the extent that they cannot be fair and impartial."

■■■ A review of the jurors' response to the questions of the trial judge indicates that the jurors' partiality had not been affected by their discussion of the exhibits. Also, the inspection of the exhibits was made at the end of the trial after all the evidence had been presented. We find that no prejudicial error was committed.

Defendant further contends that the conviction and sentencing of both armed robbery and aggravated battery were improper and should be reversed. He argues that the aggravated battery took place during the robbery and hence constituted part of the "force" which would make the assailant guilty of robbery. Defendant cites People v. Durant, 105 Ill App2d 216, 245 NE2d 41 (1969), where the court said (p 228):

"[C]oncurrent sentences for crimes resulting from the same conduct are improper, and the conviction of the lesser crime must be reversed. Therefore, the conviction on the robbery charge is affirmed, and

110

the conviction for aggravated battery is reversed."

█ The State argues that the concurrent sentences for armed robbery and aggravated battery were proper. It asserts that the robbery and battery were two distinctive acts because the force necessary to constitute robbery had already been applied at the time of the battery. The State points out that when the pistol was pulled from the complaining witness's hand, a robbery had thus taken place, and the battery that ensued was a separate act. We agree both were "separate and distinct acts." People v. Stewart, 106 Ill App2d 149, 245 NE2d 611 (1969).

Finally considered is defendant's contention that the sentences imposed were improper. He argues that the sentence of ten to twenty years was excessive, knowing that defendant was thirty years old and had never been convicted of a crime before. Defendant also states that he fired no shots, did not strike the complaining witness and in no way attempted to injure him other than in self-defense when the complaining witness drew his gun. Authorities include People v. McAndrew, 96 Ill App2d 441, 239 NE2d 314 (1968); People v. Harpole, 97 Ill App 2d 28, 239 NE2d 471 (1968); and People v. Jones, 92 Ill App2d 124, 235 NE2d 379 (1968).

█ The State argues that the sentences imposed were reasonable in light of all of the facts and circumstances of the case. It notes that the acts done were premeditated; that a gun was used; that the complaining witness received severe injuries; and that the sentence is thus "of sufficient indeterminancy to provide an incentive for the possible rehabilitation of the defendant, and the maximum sentence is clearly proportionate to the gravity and violence of the acts committed." We agree. See People v. Taylor, 33 Ill2d 417, 211 NE2d 673 (1965), where the court said (p 424):

111

"[W]here it is contended that the punishment imposed in a particular case is excessive, though within the limits prescribed by the legislature, this court should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose, or that the penalty is manifestly in excess of the proscription of section 11 of article II of the Illinois Constitution which requires that all penalties shall be proportioned to the nature of the offense."

For the reasons given, the judgments and sentences of the Circuit Court are affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.