THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH M. HUTH, Defendant-Appellant.

First District (2nd Division)   No. 60209

Opinion filed January 25, 1977.

Harvey H. Livingston, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Paul Benjamin Linton, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Kenneth M. Huth, was charged by indictment with the offense of possession of more than 30 but less than 500 grams of Cannabis sativa in violation of section 4 of the Cannabis Control Act (Ill. Rev. Stat. 1971, ch. 56½, par. 704(d)). Upon a bench trial he was found to be guilty and was sentenced to serve a term of confinement of 1 to 3 years in the Illinois State Penitentiary.

From entry of the judgment of conviction defendant appeals and

contends (1) that the trial court erroneously denied defendant's motion to suppress certain evidence as being the fruit of an unconstitutional search and seizure, and (2) that the evidence properly adduced at trial was insufficient to establish his guilt beyond a reasonable doubt.

On May 21, 1973, at approximately 1:45 a.m., defendant and two companions, Paul Hall and Geary Smith, were traveling in an automobile proceeding eastbound on Fullerton Avenue in the vicinity of its intersection with Wolf Road in the city of Northlake, Illinois. The vehicle was owned by Smith who was riding in the rear seat. The front seat of the vehicle was occupied by the driver, Paul Hall, and his passenger, defendant, Kenneth Huth.

Upon reaching the aforementioned intersection the vehicle negotiated a right hand turn onto Wolf Road. Northlake Police Officer Reid Paxton testified that he had been following Smith's vehicle for a distance of approximately 500 yards over a period of two minutes when Paxton observed that the driver of the vehicle failed to properly signal his turn. Officer Paxton pursued and curbed the vehicle. Hall exited the automobile and walked back to Paxton's squad car. Paxton asked for Hall's driver's license and summoned police assistance.

Hall produced a driver's license which had apparently been mutilated in that the back portion of the license was peeled off. Officer Paxton thereupon initiated a radio transmission to police headquarters requesting a "subject want" in the name of Paul Hall. Paxton was informed by return broadcast that, according to information received from the Office of the Illinois Secretary of State, Hall was currently "driving on suspended license."

At this point, and approximately two minutes after the initial stop, Northlake Police Officer Harvey Johnson arrived on the scene. Johnson exited his vehicle and approached the police car in which Officer Paxton sat speaking to Hall. Paxton called to Johnson and asked him to "check the other subjects for curfew."

Johnson then approached the passenger side of Smith's vehicle and asked its occupants to exit and produce identification. Johnson was carrying a lit flashlight which provided the only source of illumination in the immediate vicinity. Johnson did not draw his service revolver but indicated, "I am always in fear of my life at one o'clock in the morning with any offender."

Johnson placed his hand on the door handle. At trial he was unable to recall whether one of the passengers pushed open the door as Johnson was opening it or whether he single-handedly pulled it open.

Johnson indicated that according to "standard procedure" he "always check[s] the front seat and floor of a car when I have people get out." To this end he pointed the beam of the flashlight to a point on the vehicle's

floor board toward the passenger side of the front seat recently vacated by defendant.

At a distance of 2-3 feet and aided by the flashlight Johnson observed that "a brown paper bag was under the seat with about maybe an inch or two showing with the plastic bag protruding out of it, out of the open end of the paper bag." Officer Johnson subsequently testified that on this occasion he observed a "plastic bag protruding about two and a half, three inches out from underneath the passenger seat." The observations of Officer Johnson were also the subject of cross-examination where Johnson testified that the "marijuana" that he saw was "protruding out from under the seat, about four inches." Officer Johnson apparently demonstrated to the court the positioning of the bags under the seat at the time of the arrest. Neither of the parties saw fit to describe this demonstration for the record. The confusion is further compounded by the stipulated testimony of chemist Rebecca Cerven which revealed that *two* packages of plant material were recovered from the vehicle, tested, and proven to contain 26.6 and 27.0 grams of Cannabis sativa, respectively.

Both passengers and the driver were arrested and charged with possession of marijuana. In addition, Hall was charged with driving on a suspended license and failure to make a proper turn. At the close of the State's case-in-chief the trial court entered directed findings of not guilty as to Hall and Smith in connection with the drug charge. A similar motion on behalf of defendant Huth was denied.

Defendant testified that he did not own or operate the automobile in which the contraband was discovered and denied any knowledge of the presence of contraband in the automobile. At the time of the arrest he had been a passenger in the vehicle for approximately 25 minutes during which period he occupied the front seat; that earlier that evening he had been a passenger in the vehicle for a period of approximately 20 minutes during which period he occupied the rear seat while the front passenger seat was occupied by Smith and the vehicle's driver, Paul Hall. According to Huth, he and his friends drove from Oak Park, Illinois, to Northlake during this time and upon their arrival spent several hours at a friend's home in a nearby apartment complex engaged in conversation and drinking beer. Smith became intoxicated and was being driven home by Hall when the vehicle was curbed by Officer Paxton. No testimony was adduced as to the distance traveled from the apartment complex to the scene of the arrest or the time required to traverse this distance.

Hall testified in defendant's behalf and indicated that prior to arriving at the Northlake apartment he, Smith, and Huth, spent approximately 30 minutes traveling from Oak Park to Northlake but testified that the vehicle was driven by Smith on that occasion. Hall denied observing or placing marijuana in Smith's vehicle.

Defendant also elicited the testimony of Michael Orbeck who indicated that at approximately 12:15 or 12:30 a.m. on the date of the incident he drove his automobile to the aforementioned apartment complex. Orbeck testified that on that occasion and from a distance of 6-7 car lengths he observed a Northlake police officer. Orbeck was unable to identify the officer but aided by illumination from his headlights Orbeck was able to discern that the officer was employed by the city of Northlake by the identification of a patch on the officer's sleeve.

According to Orbeck, the officer opened the passenger door on Smith's car and "stoop[ed] down into the car." Orbeck further related that he observed the event from a point to the officer's right and noted that the officer wore a holster on that side. Orbeck did not observe the officer place anything in the car. Since he "had been in a little trouble in the military" and "didn't want to get in no more trouble" Orbeck left the scene without stopping.

Officer Paxton testified that he was in the parking lot of the apartment complex in question prior to the time of the arrest. In the parking lot, at a distance of 300-350 yards and aided by binoculars, Paxton observed three men exit and shortly thereafter return to a parked automobile. Paxton was not certain that the men and vehicle he observed at this time was the same vehicle, bearing defendant and his companions, which Paxton subsequently halted.

Paxton had been on patrol in the parking lot approximately 20 minutes prior to the time Smith's vehicle was curbed. Paxton indicated that he did not observe any other police vehicles in the lot and that since he is left handed he wears his holster on that side. Paxton denied that he approached Smith's vehicle at any time while it was parked in the lot.

Defendant initially contends that the trial court erroneously denied his motion to suppress the contraband seized from the vehicle on the ground that it was the product of an unlawful search and seizure.

■■ A review of the record supports the prosecution's argument that Officer Paxton was justified in halting the vehicle in which defendant had been traveling due to the driver's improper failure to signal a right hand turn, a violation of the Illinois Vehicle Code. (Ill. Rev. Stat. 1971, ch. 95½, par. 11—804.) Defendant does not suggest that Officer Johnson was unjustified in thereafter approaching Smith's vehicle in order to question its occupants as to possible curfew violations.

Defendant, however, focuses upon the form of the officer's inquiry which, defendant asserts, served to deprive him of his rights under the Fourth Amendment. Specifically, defendant contends that Officer Johnson exceeded his authority and the proper scope of the investigation by requiring that defendant exit the vehicle in order to examine the passengers' identification for possible curfew violation.

■■ It remains uncontroverted that Smith's vehicle was curbed as a

result of the commission of a traffic violation and upon proper request the driver was unable to produce a valid driver's license. An on-the-scene check by the arresting officer revealed that the driver was then operating the vehicle without proper license, a violation of the Illinois Vehicle Code. (Ill. Rev. Stat. 1971, ch. 95½, par. 6—303.) Such circumstances warranted the officer's reasonable belief that he was dealing with a criminal rather than a mere traffic violator and a subsequent search of the person arrested and the passengers in the automobile was justified. *People v. Gilyard* (1970), 124 Ill. App. 2d 95, 260 N.E.2d 364; *People v. Palmer* (1976), 62 Ill. 2d 261, 342 N.E.2d 353; *People v. Symmonds* (1974), 18 Ill. App. 3d 587, 310 N.E.2d 208.

Therefore, it cannot be gainsaid that the officer's actions in requiring the occupants of the vehicle to dismount was unnecessary or constituted an abridgement of defendant's rights under the Fourth Amendment. The subsequent seizure of the contraband observed by the police officer in plain view and its introduction into evidence did not violate defendant's constitutional rights. *People v. Carroll* (1973), 12 Ill. App. 3d 869, 299 N.E.2d 134; *People v. Wright* (1968), 41 Ill. 2d 170, 242 N.E.2d 180.

Defendant finally contends that the evidence properly adduced at trial was insufficient to establish his guilt beyond a reasonable doubt. Specifically, defendant asserts that since he was arrested in a vehicle over which he bore no legal title or control, was not proven to have touched the contraband recovered from such vehicle, and denied all knowledge of such contraband's existence, the circumstantial evidence adduced at trial was insufficient to establish his actual or constructive possession of marijuana.

In order to support a conviction for unlawful possession of contraband, such as marijuana, the State must establish beyond a reasonable doubt not only that the accused had knowledge of the presence of contraband, but also that the contraband was in the accused's possession and control. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370.) Knowledge of the location of contraband, although an element, is not the equivalent of possession. *People v. Jackson* (1961), 23 Ill. 2d 360, 178 N.E.2d 320.

Under appropriate circumstances, the discovery of a particular type of contraband on premises under the control of an accused, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of such contraband, absent other facts which might leave in the mind of the trier of fact a reasonable doubt as to an accused's guilt. *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.

Thus, the discovery of quantities of narcotics in an accused's living quarters may be said to give rise to such an inference. (*People v. Nettles; People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 769; *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.) It was suggested in *People v.*

*Connie* (1964), 52 Ill. App. 2d 221, 201 N.E.2d 641, that the *Nettles* rationale may be extended to automobiles.

Similarly, by statute (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(c)) the presence of weapons in certain vehicles is said to constitute prima facie evidence that such weapons are in the possession of, and are being carried by, all persons occupying the vehicle at the time the weapons are discovered.

■■ A review of the evidence adduced in the case at bar fails to yield a sufficient factual basis to support an inference of constructive possession. Defendant lacked sufficient dominion over the vehicle in which he was seated to warrant his constructive possession of the contraband discovered in the vehicle. Nor does the nature of the contraband actually discovered in the vehicle mandate application of the *Nettles* rationale to the facts of the case at bar.

Attention must therefore focus on whether the other facts adduced in the instant case are sufficient to establish defendant's actual possession of the recovered marijuana.

■■ Actual possession may be proven by testimony which shows that an accused exercised some dominion over the unlawful substance. (*People v. Jackson.*) The act of dominion may be for example, that the accused carried the substance on his body, that he tried to conceal it, or that he was seen throwing it away. *People v. Howard* (1975), 29 Ill. App. 3d 387, 330 N.E.2d 262; *People v. Hicks* (1974), 17 Ill. App. 3d 541, 308 N.E.2d 207.

■■ In the instant case, the testimony revealed only that three indivuals were traveling in a vehicle, that there was some marijuana partially concealed under a seat, and that defendant was closest to it at the moment of arrest. Mere proximity is not sufficient evidence of actual possession. (*People v. Washington* (1974), 17 Ill. App. 3d 383, 308 N.E.2d 339; Annot., 57 A.L.R.3d 1319 (1974).) Moreover, as heretofore mentioned, defendant had earlier occupied the rear seat while the front passenger seat was occupied by Smith. Given the peculiar facts of the case at bar, where defendant was in close proximity to the contraband which was visible to police officers only with the aid of artificial illumination, we are wary of concluding that defendant possessed the requisite guilty knowledge of the contraband's presence in the vehicle. Cf. *People v. Latson* (1972), 5 Ill. App. 3d 1100, 284 N.E.2d 436.

Since the evidence is insufficient to remove all reasonable doubt of defendant's guilt, we must reverse.

Reversed.

DOWNING, P. J., and PERLIN, J., concur.