THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE MOORE *et al.*, Defendants-Appellants.

First District (1st Division)    Nos. 79-2109, 79-2110 cons.

Opinion filed July 20, 1981.

508

James J. Doherty, Public Defender, of Chicago (Mary T. Woodward, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Gloria G. Coco, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Lawrence Moore and Kevin Madlock (defendants) were convicted of burglary and sentenced to 3 years. They have appealed.

The issue here is whether the fact of possession by defendants of recently stolen property may properly give rise to a presumption of guilt of burglary. On March 31, 1981, the supreme court addressed a similar situation in a definitive opinion. (*People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) Therefore, we will first state the facts and then attempt to apply thereto the teaching of *Housby*.

On February 3, 1979, a few minutes before 8 a.m., four police officers responded to a radio message of "burglary in progress" at 2143 West 71st Place. That address is on the south side of 71st Place. Officer Hutton looked down the gangway adjacent to the house. He saw a black person, identified as defendant Madlock, some 15 feet away, in the act of passing a battery charger to another black person through the side door. Madlock saw the officer. Madlock went into the house and closed the door.

The police officers noted some battery chargers, mechanical tools and other automotive equipment in front of the doorway at the side of the house. The police knocked on the door. A lady named Moore responded. She told the police the equipment did not belong to her. She told them her nephew "stays there sometimes." But "he wasn't there last night" and "she didn't think anyone was there last night." Mrs. Moore and the police entered the basement. They found Madlock upon a mattress on the floor fully clothed, covered with a blanket. Mrs. Moore said Madlock was not her nephew. The officers found defendant Moore hiding behind the furnace.

The officers examined the tools and equipment and noted initials "T.G." on certain of the items. Investigating the area, the police found a garage-type building fronting north, identified as 2121-25 West 71st Street. This is the street immediately north of 71st Place. There is a north and south alley immediately adjacent to the building itself. A screen had been removed from a front window. The officer described the interior as though some person "had been in there moving things around." After

speaking to neighbors, the officers located Thomas Gross, the owner of the building. He is owner and operator of the 71st Street Battery and Auto Center at that address on 71st Street.

Gross testified he locked and left his shop on Friday, February 2, 1979, about 11 p.m. On the morning of February 3, 1979, about 8:30, he found a plexiglass front window had been knocked out and the screen pulled away. His radio had been moved from the desk to the ground outside the door. The rear overhead door had been raised. Batteries and tools were missing and "things were thrown all over the place." At the police station, he identified the property which had been removed from the premises. He had engraved his initials on certain items. He had never given defendants or other persons permission to enter his structure or to remove his property.

The People also called Robert Thornton. On the morning of Saturday, February 3, 1979, about 7:45 or 8 o'clock, he was digging his car out of the snow close to 2143 West 71st Place. He saw the two defendants "carrying stuff from one side of the street to the other." They made about three trips "carrying equipment that you work on cars with."

Defendant Moore testified he has lived at 2143 West 71st Place for 5½ years with his mother. On the evening of February 2, 1979, he and defendant Madlock went to a party in a lounge at 71st Street and Western Avenue. They stayed from 11 p.m. until about 1:30 a.m. They walked together toward Moore's home. Within a block away, as they passed the alley adjacent to the battery and auto center, Moore saw a box of tools and "a battery and some more stuff on the side." This was about 2 a.m. Defendants walked down the alley and looked at the "stuff." Each of them took some of the items they had seen in the alley, leaving some of the others. Moore testified he did not know where the property came from or who was the owner. They went across the street to the Moore residence. They left the items they had taken at the side door. They went inside and went to sleep.

About 7 a.m. Moore went outside to dispose of some garbage. He testified he had forgotten the items which had remained in the alley. He went across the street again and brought back a battery cable. He awakened Madlock and both of them started to carry the remaining material across the street to the Moore residence. He denied removing the property from the battery center.

He saw Mr. Thornton in the street. He did not remember seeing the initials on some of the tools. He looked at the doors of the battery center. The back door was not open. He also testified he could not tell if the back door was open or closed. He testified he was in the basement when the police arrived. He saw them come. He also testified he was outside when he first saw the police come.

■■ In our opinion, the proper legal principle which is determinative of the issues in the instant case is that the rights of these defendants are not infringed upon and the presumption of guilt is properly applied only if (*Housby*, 84 Ill. 2d 415, 424):

"(i) there was a rational connection between [defendants'] recent possession of property stolen in the burglary and [their] participation in the burglary; (ii) [their] guilt of burglary is more likely than not to flow from [their] recent, unexplained and exclusive possession of burglary proceeds; and (iii) there was evidence corroborating [defendants'] guilt."

We will consider application of these criteria in order.

## I

Testimony of the police shows possession of a stolen item by Madlock, who went into the house as soon as he saw a policeman. Mrs. Moore promptly advised the officers that the property was not hers. There is complete discrepancy between her description of the defendant Moore as her nephew who stayed in the house only sporadically and defendant's own testimony that he lived there with his mother for 5½ years.

When the officers entered the basement, they found Madlock fully clothed but covered by a blanket. His position on the floor, as though asleep, was clearly spurious. Also, defendant Moore was found hiding behind the furnace.

■■ The burglary was committed in a place in close proximity to the Moore home. The proceeds of the burglary were carried partly through the alley and then across the street to the side entrance of the Moore home. The relationship in time between the actual burglary and possession of the loot by defendants is so remarkably close as to make clear that there is a strong and rational connection between possession of the stolen property by these defendants and their participation in the burglary. The only evidence in this record as to the time of the burglary was the police broadcast "burglary in progress" shortly before 8 a.m. Since there was no burglary at 2143 71st Place, the report was necessarily related to the burglary established to have occurred at 2121-2125 71st Street. This connection is so strong as virtually to amount to circumstantial proof beyond reasonable doubt of the guilt of these defendants.

## II

Similarly, it follows as a corollary that the guilt of these defendants of burglary is more likely than not to flow from their "recent unexplained and exclusive possession of burglary proceeds." Robert Thornton observed and identified defendants as having made three trips carrying automotive items across 71st Place. These trips were apparently made

from the alley immediately adjacent to the battery center across 71st Place to the Moore residence. There was easy access from the burglarized premises to the basement in which defendants stored the stolen property.

Defendant Moore testified in some detail as to the movements of Madlock and himself. The veracity of Moore leaves much to be desired. He was the only person who was unaware of the condition of the burglarized premises and the open rear door. The police discovered a burglary had been committed simply by looking at the property. Thomas Gross saw his radio sitting outside the door. It is incredible that the defendants made three trips to remove the stolen property, noted this property of some value upon the ground, and yet were unaware of the commission of the burglary. Moore testified the back door of the battery center was not open and also he could not tell if it was open or closed. Defendants made no inquiry from any person as to who the owner of the property was.

■■ Moore testified he first saw the police when he was in the basement. He also stated he was not in the basement when the police came but that he was outside of the house when he first saw the police. He testified he simply looked at the police officer and then went inside the house. This is contradicted by police testimony that he was handing some of the items in to someone else in the basement and when defendant observed the police he ran inside. Here again the close proximity of the burglarized premises to the basement where defendants stored the property and the fact that defendant Moore had lived in the same place for 5½ years make definite and certain that his guilt of burglary is more likely than not to flow from his possession of the stolen property.

### III

■■ This analysis shows there is ample evidence to corroborate the guilt of these defendants. Although Moore testified he did not observe the initials engraved on the tools, he conceded directly that he knew the property did not belong to these defendants. Moore testified he went inside the home as soon as he saw a police officer. Moore tried to hide behind the furnace. Madlock covered himself on the mattress and pretended to be asleep. This conduct tends to show a consciousness of guilt. See *People v. Harris* (1972), 52 Ill. 2d 558, 561, 288 N.E.2d 385.

Our comparison of the facts in the instant case to the facts in the *Housby* opinion convinces us that the case here is at least as strong for the prosecution as the evidence in *Housby*. In fact, there is a far stronger connection between the defendants and the burglary in the instant case as regards proximity of time and location than appears in *Housby*. In addition, one of the most important factors stressed in *Housby* is (84 Ill. 2d 415, 431):

"But the inference arising from possession of recently stolen property is a permissive one and shifts only the burden of production, not the burden of proof. [Citation.] The burden of production shifts to the defendant only if the jury decides to accept the move from the proved fact to the presumed element. [Citation.] At that point, the burden on the defendant to produce a reasonable explanation of possession is no more onerous than the normal consequence of any evidence introduced by the State tending to show guilt. The defendant must neutralize the State's case in the eyes of the jurors or suffer a conviction. The constitutional dangers of presumptions used in criminal cases—that they will deprive the jury of its right to an independent evaluation of the evidence or relieve the State of its duty to prove every element of the offense beyond a reasonable doubt [citation]—are simply not presented by the inference used in this case."

Another matter of importance is the statement in *Housby* (84 Ill. 2d 415, 430-31):

"Sufficient corroboration is also presented where the defendant himself presents an explanation of possession that the jury reasonably finds to be false. Housby's attempt to explain his possession of the stolen property in a way which showed him innocent of any wrongdoing could justifiably have damaged him in the eyes of the jury."

In the instant case, in announcing his finding of guilt, the trial judge made these observations among others:

"THE COURT: * * *. The only question before me is whether or not the State has proven its case of burglary as far as these two defendants are concerned. * * *. The State by the State's witness, Mr. Thornton, who happens to be on the street, puts him in the area of a couple of trips. The officer testified that a screen was removed, the owner of the garage says his garage door was open. These are the facts that have been proven by the State. Now, the defendant takes the stand and tries to state that he did not burglarize the property, he just happened to walk around the area and saw it and picked it up. Now, the next morning, he completed the trip so he should have seen what the officers saw, the screen and the doors open and so forth."

■■ This demonstrates that the trial court did not blindly apply the presumption in question. On the contrary, he analyzed the evidence and found that the State had proved defendants guilty of burglary beyond a reasonable doubt. This court should not disturb his factual findings.

Our careful consideration of the entire record leads us to the firm conclusion that the requirements of *Housby* have been fully complied

with, and the guilt of defendants for burglary as charged has been proved beyond reasonable doubt.

Judgments affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.