THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THEODORE FLOWERS, Defendant-Appellant.

Second District   No. 81—399

Opinion filed December 30, 1982.

B.J. Farrell, of Wheaton, and G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Theodore Flowers, was convicted of

burglary (Ill. Rev. Stat. 1979, ch. 38, par. 19—1) and possession of burglary tools (Ill. Rev. Stat. 1979, ch. 38, par. 19—2). He was sentenced to concurrent terms of imprisonment of seven years and one year, respectively, for these offenses.

Defendant appeals contending the trial court erred (1) in denying his motion to suppress evidence on the grounds defendant lacked "standing" to assert a fourth amendment interest in the vehicle searched; (2) that the evidence was insufficient to establish his guilt beyond a reasonable doubt; (3) that the court erred in denying his petition to be treated as an addict under the Dangerous Drug Abuse Act; and (4) that the court erred in refusing defendant's tendered circumstantial evidence instruction.

We consider first whether defendant, as driver of a car in which its owner was a passenger, had such an expectation of privacy in the car and its contents as to permit him to challenge the reasonableness of a search of the car.

Defendant filed a pretrial motion to suppress evidence seized after a warrantless search by police of a car in which he was riding, together with all other evidence resulting from the alleged illegal search and seizure. At the hearing of his motion defendant testified that at 11:50 p.m. on December 11, 1980, he was driving a Buick automobile owned by co-defendant, Julius Harshaw, in Oak Brook, Illinois. Harshaw was a passenger riding in the front seat. When defendant noticed the flashing lights of a police car behind him he pulled over to the curb and got out. One of the officers met defendant at the rear of the Buick where Harshaw joined them. When defendant could not produce a driver's license the officer asked for his name, address and birthdate. Harshaw was also unable to produce a driver's license but exhibited a traffic citation, apparently to show his license existed. Defendant told the officer the car belonged to Harshaw.

Defendant testified the officer returned to his squad car, without telling them why they had been stopped, and he and Harshaw returned to the Buick. Harshaw got in on the driver's side and defendant in the front passenger's seat.

The officer came back to the Buick and after speaking to Harshaw they went back to the squad car; Harshaw returned in a few minutes and again got in the driver's seat. The officer then opened the rear door, looked into the back seat of the Buick, and started to question them about items he saw there. The officer had no warrant nor did either defendant or Harshaw give him permission to go into the car.

The officer saw a brown shoulder bag on the back seat inside of

which he found prescription forms. He then directed both men to get out of the car and continued his search locating hypodermic syringes and tools near the front passenger seat. The officer then told the men they were under arrest; he did not tell them why they had been originally stopped until later at the police station where defendant was given traffic citations for failure to have a driver's license and for defective brake lights.

After defendant's testimony the State moved for a directed finding denying the motion to suppress on the grounds defendant had failed to establish "standing" to assert a fourth amendment violation premised upon the search of Julius Harshaw's car. The trial court agreed and denied the motion to suppress evidence.

In considering a ruling on a motion to suppress evidence a reviewing court may also consider evidence adduced in trial following the suppression hearing. (*People v. Braden* (1966), 34 Ill. 2d 516, 520, 216 N.E.2d 808, 810; *People v. Sledge* (1981), 92 Ill. App. 3d 1051, 1055, 416 N.E.2d 412, 415, *appeal denied* (1981), 85 Ill. 2d 560.) We will do so to the extent necessary to resolve the issues presented.

Officers Alan Borkover and Sue Srch of the Oak Brook Police Department testified in trial they had observed the Buick automobile after it pulled out of the driveway of a business located at 600 Hunter Drive and noticed it did not have brake lights. After stopping the car Officer Borkover asked the driver, who he identified as defendant, for his license. When defendant could not produce a license the officer made a radio check and, on learning it had expired, arrested defendant for driving without a valid license.

Officer Borkover further testified that while standing beside the car he had observed a typewriter and a space heater in its back seat and he opened the door and searched the vehicle. On the passenger side of the floor of the front seat the officer found a pair of pliers, chisel and two rocks. He also found there an envelope containing cancelled and blank checks imprinted with the name of C. David Loftus of 615 West 22nd Street, Oak Brook, Illinois, a location adjacent to the place the Buick was first seen by the officers. The officer also searched the rear seat area of the car finding two bags containing cameras and photograph equipment, an IBM typewriter, space heater, tape recorder, clock radio and a calculator. A brown shoulder bag when opened was found to contain blank prescription pads and hypodermic syringes were also located in the car.

Officer Borkover thereupon contacted another officer by radio requesting he check the building located at the address on the checks. That investigation disclosed the building had been forcibly entered

that night and most of the items found in the Buick had been stolen. A button was also located at the scene of the burglary. It was compared to the buttons on defendant's coat in a crime laboratory and a witness testified they were from the same die; a button was missing from defendant's coat.

After searching the car the officers removed the items located in it and took both men to the police station where citations for failure to have a driver's license (Ill. Rev. Stat. 1979, ch. 95½, par. 6—101) and defective brake lights (Ill. Rev. Stat. 1979, ch. 95½, par. 12—208) were issued to defendant. He was subsequently charged with burglary and the evidence seized from the car and the button were admitted in trial.

On appeal defendant contends that as the driver of the car and in control of it he had a possessory interest giving rise to a legitimate expectation of privacy protected by the fourth amendment. He further argues that the nonconsensual search of the vehicle without a warrant and without probable cause to believe he had committed or was committing a crime was unreasonable. The State responds that as the car was owned by the passenger, Julius Harshaw, the mere fact defendant was driving it was insufficient to invest him with an interest in the car protected by the fourth amendment. It also asserts that the officers were justified in stopping the car for the brake light violation and the ensuing circumstances supported defendant's arrest and the search of the vehicle.

■ In *Rakas v. Illinois* (1978), 439 U.S. 128, 139, 58 L. Ed. 2d 387, 398, 99 S. Ct. 421, 428, the court concluded the issue of standing involved "two inquiries: first, whether the proponent of a particular legal right has alleged 'injury in fact,' and, second, whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties." The court there rejected the claim that passengers in a car, who asserted no property or possessory interest in either the car or property seized in it, had a protected privacy interest which would be violated by an unreasonable search. Under *Rakas*, a defendant must show that he had a "legitimate expectation of privacy in the invaded place" (439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430) and cannot rely upon the former "automatic standing" rule of *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, simply because he was in a place he had a right to be at the time of the search. See *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547.

The circumstances in which an automobile was stopped and

searched by officers when its owner was a passenger and defendant was driver have been considered by reviewing courts. In *State v. Emery* (1979), 41 Or. App. 35, 597 P.2d 375, the court concluded that defendant's temporary control of the car as driver did not give him a sufficiently greater expectation of privacy in its contents to enable him to object to a search of the passenger compartment and trunk. In *United States v. Lochan* (1st Cir. 1982), 674 F.2d 960, the court considered as factors relevant to a privacy expectation whether defendant was legitimately present in the area searched; his possession or ownership of the area or the property seized; prior use of the area searched or the property seized; the ability to control or exclude others use of the property; and, a subjective expectation of privacy therein. (674 F.2d 960, 965.) The *Lochan* court concluded that defendant's expectation of privacy based upon the facts he was driving the car when stopped, that he had the car's registration in his pocket and had apparently been on a trip of several hundred miles was insufficient in view of the presence of the owner and lack of other evidence of a privacy expectation.

In the present case defendant concedes he had no technical property rights in the car, but argues that as driver he controlled and directed it giving him a sufficient possessory interest to give rise to a privacy expectation in its contents.

■■ We find the reasoning of the courts in *Emery* and *Lochan* persuasive and conclude defendant has failed to establish he had a reasonable expectation of privacy in the contents of the car to support assertion of his claim of a fourth amendment violation. Neither in his motion to suppress evidence or testimony in support of it did defendant claim any property interest in the items seized in the search or any other property in the car. He did not own the vehicle and has not shown that the owner, also present, had given defendant any rights in it other than to drive it; that too may well have been under the direction and control of the owner. It also appears that the owner of the car had reasserted all control over it at the time of the search. After being stopped by the officers both defendant and Harshaw left their respective positions in the car; however, after talking to the officer, Harshaw got in the driver's seat and defendant became a passenger. At the time of the search defendant in this case had no different status relative to the vehicle and its contents than did the defendant in *Rakas*. As he failed to show a reasonable expectation of privacy in the vehicle or the items seized defendant may not be heard to object to the reasonableness of the search of the car and seizure of evidence therein.

■ Defendant has also argued that the stopping of the car and detention of its occupants for a routine traffic offense was an unreasonable seizure of his person under the fourth amendment of the United States Constitution requiring suppression of evidence seized as a result thereof. (*Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391; *People v. Kunath* (1981), 99 Ill. App. 3d 201, 425 N.E.2d 486, *appeal denied* (1981), 85 Ill. 2d 580.) Although we have found defendant did not have a legitimate expectation of privacy in the car and thus could not raise a challenge to its search, he clearly may test the reasonableness of the stop of the vehicle and his detention as it affected his personal liberty. See *People v. Deppert* (1980), 83 Ill. App. 3d 375, 403 N.E.2d 1279.

The Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 107—2) provides,

"A peace officer may arrest a person when:

\* \* \*

(c) He has reasonable grounds to believe that the person is committing or has committed an offense."

The officers stopped defendant when they observed the brake lights on the car were not operating. When defendant could not produce a driver's license they arrested him for failure to have a license. As the officers had a reasonable basis for stopping and detaining defendant, suppression of the evidence thereafter seized is not required on that grounds. Compare *People v. Kunath* (1981), 99 Ill. App. 3d 201, 425 N.E.2d 486, *appeal denied* (1981), 85 Ill. 2d 580; see *People v. Hampton* (1981), 96 Ill. App. 3d 728, 732, 422 N.E.2d 11, 14, *appeal denied* (1981), 85 Ill. 2d 570; *People v. Mathis* (1977), 55 Ill. App. 3d 680, 684, 371 N.E.2d 245, 249, *appeal denied* (1978), 71 Ill. 2d 597; *People v. Huth* (1977), 45 Ill. App. 3d 910, 360 N.E.2d 408; *Gustafson v. Florida* (1973), 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488; *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860.

Defendant next contends he was not proved guilty of burglary beyond a reasonable doubt because his conviction was based solely on the presumption of guilt arising from exclusive and unexplained possession of recently stolen property.

It has been established that the permissive inference of burglary based upon the exclusive, unexplained possession of recently stolen property is not proper absent other corroborative evidence which makes the inference "more likely than not." (*County Court of Ulster County v. Allen* (1979), 442 U.S. 140, 163-64, 60 L. Ed. 2d 777, 795-96, 99 S. Ct. 2213, 2228; *People v. Housby* (1981), 84 Ill. 2d 415, 423-

24, 420 N.E.2d 151, 155, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160; *People v. Moore* (1981), 98 Ill. App. 3d 507, 511, 424 N.E.2d 751, 753.) Thus, there must be a rational connection between the facts proved (possession) and the facts inferred (burglary). *People v. Housby* (1981), 84 Ill. 2d 415, 424, 420 N.E.2d 151, 155, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160; *People v. Moore* (1981), 98 Ill. App. 3d 507, 511, 424 N.E.2d 751, 753.

■ The evidence was sufficient in this case to support the permissive inference of burglary. In addition to defendant's possession of the recently stolen property there was direct evidence: that a forcible entry had been made into the building from which the property was stolen; that the defendant was in possession of tools with which to make such an entry; that his arrest occurred near the building within six hours of the time the property was last seen in the building; that a button similar to those on defendant's coat was found at the scene of the crime and the defendant's coat was missing a button. We conclude there was a rational connection between defendant's possession of the stolen property and his participation in the burglary and the evidence was sufficient to make it "more likely than not" that defendant committed the burglary. (*People v. Moore* (1981), 98 Ill. App. 3d 507, 513-14, 424 N.E.2d 751, 755.) Defendant's reliance on *People v. Ross* (1981), 103 Ill. App. 3d 883, 431 N.E.2d 1288, *appeal denied* (1982), 91 Ill. 2d 62, is misplaced. In *Ross*, there was no evidence of forcible entry into the apartment nor evidence that the defendant may have been on the premises.

Defendant next asserts the trial court erred in denying his petition to be treated as a narcotic addict under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.1 *et seq.*).

On April 20, 1981, after conviction but before sentencing, defendant filed a petition to elect to be treated under the Act. The State moved to strike the petition, alleging defendant was not eligible to elect treatment as an addict because there were two pending burglary charges against him and, also, defendant's probation officer had not consented to the election. The State also argued he was not eligible for any type of probation because of a prior conviction for burglary within 10 years.

At the hearing of defendant's motion held May 14, 1981, defendant's counsel advised the court that due to an oversight the Cook County Probation Department had not been contacted to request a consent and asked for a continuance in order to do so. He also advised the trial court that defendant had entered guilty pleas to the

other burglary charges before another judge of the Du Page County Circuit Court, for which he was awaiting sentence, and, therefore, those charges were no longer pending against defendant. Counsel further argued that defendant was eligible for treatment under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 95½, par. 120.1 *et seq.*) pursuant to *People v. Teschner* (1980), 81 Ill. 2d 187, 407 N.E.2d 49.

The trial court denied defendant's petition to elect treatment as an addict rather than be sentenced finding he was not eligible to do so, after conviction, as defendant was not eligible for probation because he had also been convicted of burglary in 1980.

At the sentencing hearing held following denial of defendant's petition he testified he had started using heroin in 1976 and by 1980 he was expending $75 to $150 each day for that purpose. The presentence report also discloses defendant was convicted of robbery with violence in the State of Connecticut in 1970 and sentenced to a term of 1½ to five years' imprisonment; in 1980 he was convicted of burglary in Illinois and was serving a term of probation when sentenced in the present case, and, he had been convicted of the illegal possession of credit cards in 1980 for which defendant served four days in jail.

■ On May 14, 1981, when defendant's petition was denied and he was sentenced to imprisonment, section 10 of the Dangerous Drug Abuse Act provided that a court may place a person who has been convicted of a crime on probation for treatment under the Act, "if such a sentence is consistent with Section 5—6—1(a) of the Unified Code of Corrections ***." (Ill. Rev. Stat. 1979, ch. 91½, par. 120.10.) Section 5—6—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a)) provided that a sentence of probation could be imposed "[e]xcept where specifically prohibited by other provisions of this Code." One such prohibitive provision in the Unified Code of Corrections was section 5—5—3(c)(2)(F), which stated that a term of probation shall not be imposed for a Class 2 felony if the defendant has been convicted of a Class 2 or greater class felony within 10 years of committing the present offense. Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(c)(2)(F).

As eligibility for probation was a condition superimposed upon section 10 of the Dangerous Drug Abuse Act at the time defendant was sentenced, the trial court correctly denied his petition to elect treatment under the Act. (See *People v. Teschner* (1980), 81 Ill. 2d 187, 194, 407 N.E.2d 49, 53; *People v. Benedetto* (1981), 102 Ill. App. 3d 10, 17-18, 428 N.E.2d 1169, 1175-76.) Public Act 81—851 (ap-

proved and effective September 20, 1979), which imposed the condition barring defendant's eligibility under the Act, was in effect both at the time this offense was committed and when defendant was sentenced and no question of election to be sentenced under a different law arises. See *People v. Andrews* (1981), 95 Ill. App. 3d 595, 600, 420 N.E.2d 509, 512, *appeal denied* (1981), 85 Ill. 2d 567.

Defendant has argued, without citation of relevant authority, that application of the requirement that he be eligible for probation under the Unified Code of Corrections to the eligibility requirements of the Dangerous Drug Abuse Act unconstitutionally deprives him of due process of law. That was the law, however, when defendant committed the offense and when sentenced, and the trial court followed the applicable legislative provisions. See *People v. Teschner* (1980), 81 Ill. 2d 187, 194, 407 N.E.2d 49, 53.

In view of our disposition of this issue we need not consider whether the trial court abused its discretion in failing to grant a continuance for defendant to seek the consent of his probation officer. Nor will we address the issue of whether defendant was ineligible to elect treatment under the Act because other burglary charges were pending to which he had pled guilty, but had not yet been sentenced. See *People v. Morguez* (1980), 90 Ill. App. 3d 471, 413 N.E.2d 128, *appeal denied* (1981), 83 Ill. 2d 573.

■ Defendant finally contends the trial court erred by refusing to submit to the jury the second paragraph of the circumstantial evidence instruction (Illinois Pattern Jury Instruction, Criminal, No. 3.02 (2d ed. 1981)) (hereinafter cited as IPI Criminal). It provides:

"You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

It is established, however, that this paragraph should be given only when the evidence is entirely circumstantial. (*People v. Edmondson* (1982), 106 Ill. App. 3d 716, 720, 435 N.E.2d 870, 873; *People v. Stokes* (1981), 95 Ill. App. 3d 62, 69, 419 N.E.2d 1181, 1187, *appeal denied* (1981), 85 Ill. 2d 573.) Even where the paragraph should have been given, but was not, a reversal is not required unless it appears that justice was denied or that the verdict resulted from such error. (*People v. Edmondson* (1982), 106 Ill. App. 3d 716, 720-21, 435 N.E.2d 870, 873.) That is especially true where the jury has been instructed as to the presumption of innocence and the State's burden of proof, since the second paragraph of IPI Criminal No. 3.02 is essentially a restatement that the defendant must be proved guilty beyond a reasonable doubt. *People v. Cross* (1981), 100 Ill. App. 3d 83, 90, 426

N.E.2d 623, 629.

In this case there was direct evidence that a burglary had been committed showing the forcible entry of the building and missing property. The only circumstantial evidence considered was the button which linked the defendant to the place where the offense occurred. It has been held by this court that direct evidence of the crime alone is sufficient to preclude giving of the second paragraph of IPI Criminal No. 3.02. (*People v. Edmondson* (1982), 106 Ill. App. 3d 716, 721, 435 N.E.2d 870, 874; *People v. Christiansen* (1969), 118 Ill. App. 2d 51, 57-58, 254 N.E.2d 156, 159-60.) In any event, it does not appear from the record that justice was denied or that the verdict was based upon the lack of the requested instruction and the jury was correctly instructed as to the presumption of innocence and the State's burden of proof.

Accordingly, the judgment of the circuit court of Du Page County will be affirmed.

Affirmed.

REINHARD and VAN DEUSEN, JJ., concur.