# Illinois Official Reports

## Appellate Court

---

### *People v. Padilla*, 2021 IL App (1st) 171632

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT PADILLA, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-17-1632 |
| Filed<br>Modified upon<br>denial of rehearing | June 24, 2021<br><br>August 12, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-12178; the Hon. Evelyn B. Clay, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Maggie A. Heim, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Brian A. Levitsky, and Ahmed Islam, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant Robert Padilla was convicted of one count of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)), two counts of unlawful use or possession of a weapon by a felon (*id.* § 24-1.1(a)), one count of unlawful use or possession of a weapon by a felon (*id.*), one count of burglary (*id.* § 19-1(a)), and three counts of theft (*id.* § 16-1(a)(1)(A)). Defendant was acquitted of one count of possession of burglary tools (*id.* § 19-2) and one count of criminal damage to property (*id.* § 21-1(a)). He was sentenced to concurrent sentences of eight years in the Illinois Department of Corrections on the armed habitual criminal and burglary counts.

¶ 2    On appeal, defendant alleges that (1) the evidence was insufficient to establish his guilt beyond a reasonable doubt, (2) the trial court erroneously denied his motion to suppress evidence obtained pursuant to a search warrant, (3) inadmissible hearsay evidence was admitted against him at trial, and (4) trial counsel was ineffective for failing to support defendant's defense at trial with evidence establishing that he was not connected to the offenses.

¶ 3    For the reasons that follow, we affirm both defendant's convictions and sentences.[1]

¶ 4                                I. BACKGROUND

¶ 5    On May 26, 2013, Cindy Giron was the assistant store manager on duty at the Walgreens at 3045 West 26th Street and was responsible for closing the store at 9 pm. The store was located in a strip mall and was connected to another vacant business with an address of 3051 West 26th Street, which was formerly occupied by Washington Mutual Bank.

¶ 6    Before closing the store, Ms. Giron counted the contents of each register and then dropped the contents of each register into a safe located in the office, which was at the back of the store. The office contained two safes. One held money and identification cards or debit cards that people forgot at the store, while the other held Chicago Transit Authority (CTA) bus cards and cigarettes. Everything was secured in the safes before Ms. Giron left work. Before leaving the store, Ms. Giron ensured that no customers or employees were still inside, turned off the lights, locked the doors, and turned on the alarm system. By the time that all of these tasks were completed it was between 9:45 and 10 p.m.

¶ 7    The following day, May 27, 2013, another assistant store manager, Salomea Cuevas, arrived at the Walgreens at 7:20 or 7:25 a.m. Upon arriving at the store, Ms. Cuevas disarmed the alarm system and went to the office, where she noticed a lot of debris in the hallway right outside of the office door. Inside the office, Ms. Cuevas saw a three-foot hole in the wall. Both

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

safes were missing, and the office was a mess. When Ms. Cuevas looked through the hole, she saw the safe that held the cigarettes and bus passes in the adjacent vacant Washington Mutual Bank property. Ms. Cuevas called 911, and the police were dispatched to the scene.

¶ 8    Ms. Cuevas testified that the safe that held the money contained three days' worth of deposits, with a total estimated value of $40,000. Money from the day's sales was banded together with deposit bands, while coins were rolled. The displaced safe was pried open, revealing that its contents were all missing. Ms. Cuevas estimated the value of the missing CTA cards to be between $10,000 and $20,000. Between 20 and 30 cartons of cigarettes, totaling between 200 and 300 individual packs of cigarettes, were also taken.

¶ 9    James Santiago, the general manager of the strip mall, testified that the Washington Mutual Bank space at 3051 West 26th Street was closed on May 27, 2013. Mr. Santiago visited the property every day and was last there on May 26, 2013. Mr. Santiago went to the store after he received a call from Walgreens manager Hector Mora. Upon opening the front door of the vacant bank, Mr. Santiago noticed a breach in the wall that revealed a hole extending from the vacant property to the adjacent Walgreens wall. Mr. Santiago walked outside to the rear of the vacant property where he found a number of his tools, including a pair of giant steel pry bars. Mr. Santiago testified that the back door could be pulled out and there would be about "one inch play." The back door appeared to be tampered with and had marks between the metal plate and the door that were not previously there.

¶ 10    Detective Anthony Pulcanio responded to the scene and also observed the large hole in the wall in the manager's office and the displaced safe in the adjacent vacant property. Upon seeing cinder-block and drywall damage, Detective Pulcanio surmised that the entry was made from the adjacent property because the displaced drywall and cinder blocks were stacked up in the vacant space.

¶ 11    Detective Pulcanio spoke with Ms. Cuevas and an evidence technician who was also called to the scene. Detective Pulcanio went through the hole in the Walgreens office into the vacant space and walked to the back door, where he observed pry marks and a "lot of play in the door where you could get a screwdriver in there to manipulate the lock." Detective Pulcanio and his partner, Detective Ken Becker, went outside and located a camera south of the Walgreens, on the Mega Mall building. Detective Pulcanio later watched a video from the early morning hours of May 27 and burned a copy of the video onto a disk. On the video, Detective Pulcanio saw a light-colored SUV driving northbound into the alley behind the Walgreens, followed by an individual walking up to the camera, looking straight up at it, and then using what appeared to be a large PVC pole to change the position of the camera. Detective Pulcanio could not determine the race or even the sex of the person depicted on the videotape, although he believed the person depicted on the video appeared to be "light-skinned." After taking multiple photographs of the scene, the detectives returned to the 10th District police station. At that time, there were no known suspects.

¶ 12    On May 31, 2013, between 7 and 7:30 a.m., Detective Pulcanio received a call from an unidentified female, who provided him with a lot of information. Detective Pulcanio then prepared a complaint for a search warrant for Robert Padilla and the garden and first floor apartments at 2727 South Trumbull Avenue. The search warrant was approved by Judge Clarence Burch that same day.

¶ 13    In the meantime, Officer Peter Theodore was assigned to surveil defendant's known address of 2727 South Trumbull Avenue because he was a suspect in the burglary. At about

11 a.m., Officer Theodore saw defendant exit the front yard of 2727 South Trumbull Avenue holding a white bag. Defendant entered the passenger side of a gray Nissan Sentra, while a female Hispanic person entered on the driver's side and began driving southbound on Trumbull Avenue. Enforcement Officer Angelo Mandile and his partner followed the Sentra and curbed it at 2830 South Trumbull Avenue after noticing that neither the female driver nor defendant were wearing seat belts.

¶ 14 Officer Mandile approached the passenger side of the Sentra on foot and noticed that defendant was holding a white plastic grocery-type bag in his lap. The bag was open, and Officer Mandile could see that the bag contained a "bundle" of currency that he estimated to have a value of about $1000, along with over a hundred CTA bus cards. Defendant was arrested and taken to the 10th District police station.

¶ 15 Later that day, Officer Gerardo Vega and other officers executed a search warrant at 2727 South Trumbull Avenue. In the front bedroom of the first-floor apartment, Officer Vega recovered three pieces of mail bearing the name of Robert Padilla with an address of 2727 South Trumbull Avenue. One piece of mail, from the Illinois Department of Human Services (DHS), was addressed to defendant at the basement apartment of 2727 South Trumbull Avenue. A second piece of mail, from Citi Visa, was addressed to defendant at 2727 South Trumbull Avenue and did not specify which apartment, and the third, an Illinois Sex Offender Registration Act form contained an address for the first-floor apartment of 2727 South Trumbull Avenue. See 730 ILCS 150/1 *et seq.* (West 2012).

¶ 16 The officers also searched the separate basement apartment, which had no connecting stairway between the basement and first floor apartments. Detective Pulcanio, who was also present for the execution of the search warrant, observed a black locked Sentry Safe in the basement apartment. The SWAT unit opened the safe, revealing numerous bundles of currency in varying denominations, totaling more than $5000. Some of the money was wrapped in Federal Reserve money bands and some in rubber bands. The safe also contained a tan cloth Federal Reserve money bag that held a loaded blue steel revolver with six live rounds.

¶ 17 The search also revealed 11 CTA bus cards on an end table, in excess of $500 in rolled coins, and two receipts reflecting recent cash purchases from a Home Depot and a Sam's Club. One of the boxes of coins had a recent stamp indicating that it was from Brink's. The team also found hundreds of packs of cigarettes, both in cartons and individual packs, a radio scanner set to the 10th District (the same district that both the Walgreens and 2727 South Trumbull Avenue were located within), several walkie-talkies, and a Chicago police jacket. The police also recovered a double large-size acetylene tank, a large-size torch, and a large assortment of tools.

¶ 18 The police also found a brown wallet containing Illinois identification for a male Hispanic person with the name of Richard A. Nunez and an address of 2727 South Trumbull Avenue.

¶ 19 No proof of residency for defendant was found in the basement apartment.

¶ 20 Outside, in the gangway, Detective Pulcanio saw a two-by-two piece of plywood with circular black marks on it that appeared to be burn marks from something hot being dropped onto it. After making this observation, Detective Pulcanio went to the alley directly behind the residence, where he saw a cardboard box for a Sentry Safe in the garbage can.

¶ 21 Detective Pulcanio spoke with Mark Gordon, district manager of the loss prevention department at Walgreens, and gave him a series of numbers from the recovered CTA bus passes to see if they could be traced. One of the serial numbers on a CTA bus pass recovered from the

basement was 1513787233. Mr. Gordon contacted Mike Thiry from the CTA and provided him with this serial number to see if it could be traced back to the Walgreens at 3045 West 26th Street.

¶ 22 Mr. Thiry testified that CTA passes have unique serial numbers, which are recorded when they are sold. Mr. Thiry told Mr. Gordon that the CTA bus pass bearing the number 1513787233 was part of a shipment of 7-day passes, which were sent to another Walgreens located at 47th Street. Mr. Gordon testified that Walgreens stores will sometimes restock their supply of CTA passes from neighboring stores if their supply is running low. Mr. Gordon learned that the CTA pass bearing serial number 1513787233 was transferred from the Walgreens on 47th Street to the Walgreens at 3045 West 26th Street.

¶ 23 Defendant was charged with one count of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)), two counts of unlawful use or possession of a weapon by a felon (*id.* § 24-1.1(a)), one count of unlawful use or possession of a weapon by a felon (*id.* § 24-1.1(a)), one count of burglary (*id.* § 19-1(a)), three counts of theft (*id.* § 16-1(a)(1)(A)), one count of possession of burglary tools (*id.* § 19-2), and one count of criminal damage to property (*id.* § 21-1(a)).

¶ 24 Prior to trial, defendant filed multiple pretrial motions to suppress evidence, which attacked both the legality of his arrest as well as the legality of the search warrant. Extensive litigation followed. An evidentiary hearing was held on defendant's motion to suppress, which alleged that the police lacked probable cause to arrest him. At the hearing, Officer Mandile testified that he and his partner, Officer Reynaldo Serrato, were working as law enforcement officers on a tactical team on May 31, 2013, at about 11:15 a.m. At that time, defendant's known address was being surveilled by Officer Theodore. From speaking with Detective Pulcanio, Officer Mandile knew that a burglary had occurred four days earlier at the 26th Street Walgreens and that cigarettes, bus cards, and bundles of cash and coins had been taken.

¶ 25 When Officer Theodore informed Officer Mandile that defendant and a female had entered a silver Nissan Sentra, Officer Mandile and his partner drove to the 2700 block of South Trumbull address and, upon observing that neither occupant of the vehicle was wearing a seat belt, the officers activated their emergency equipment and sirens and pulled over the vehicle. Officer Mandile approached the passenger side of the vehicle, where he saw defendant seated in the passenger seat holding a white plastic grocery-type bag in his lap. Inside the open bag, Officer Mandile saw what appeared to be over a hundred CTA bus cards and a "bundle" of currency. Officer Mandile had defendant exit the vehicle and placed him under arrest.

¶ 26 At the conclusion of Officer Mandile's testimony, the court granted the State's motion for a directed finding, ruling that "[t]his arrest was classic probable cause."

¶ 27 The parties also litigated the sufficiency of the search warrant, which authorized a search of "Robert Padilla age 50 dob: 15-SEP-1962 Male Hispanic IR # 580401," and the "premises of 2727 S. Trumbull Avenue, Chicago, Illinois, a brick 2-flat building in Chicago Illinois Cook County, garden apartment and 1st floor apartment," and the seizure of "1-Steel security safe, USC, Cigarettes, CTA Bus Passes, Firearms, Blowtorches, and Tools."

¶ 28 The complaint for search warrant alleged:

"I, Detective Anthony PULCANIO #20471, your affiant, am a Chicago Police Officer, and have been employed as such for 15-years. Your affiant is presently assigned to the Area Central Detective Bureau Robbery/Burglary Unit working out of

the 10th district at 3315 W. Ogden Ave. I have conduced investigations involving burglaries and robberies from persons and properties.

I continue to investigate these cases today.

CASE REPORT RD# HW292403

On 27-May-2013, between the hours of 0300 and 0700, unknown individual(s) possibly Hispanic was captured on video by a camera that is affixed to a wall in the alley at 3057 W. 26th Street. The unknown individual was carrying a long piece of PVC piping and used the pipe to push the camera upwards in attempts to prevent video from being recorded in the alley behind Walgreens at 3045 W. 26th Street.

Between the hours of 0300 and 0700 unknown individuals entered the unoccupied office space adjacent to Walgreens and proceeded to use unknown tools to break through a cinder block brick and drywall to gain access to the manager's office which contained 2-safes containing approximately $40,000USC, over a hundred packs of cigarettes, dozens of bus passes and US postage stamps.

The unknown individuals gained entry to the larger of 2-safes and removed a second approximately 3-foot high safe from the premises.

On today's date, 31-May-2013, the undersigned received an anonymous phone call from an anonymous female who related that she had been in the basement apartment at 2727 S. Trumbull on 30-May-2013 and had observed the subject Robert PADILLA with an unknown individual counting USC.

The anonymous female stated that she heard the number 35,000 during the time that she was in the basement. The anonymous female also stated that she observed a dismantled security safe that PADILLA stated had used a blow torched [*sic*] to open the safe. The anonymous female also stated that she observed hundreds of packs of cigarettes and numerous amounts of bus passes in the basement apartment as well. The anonymous female stated that she helped PADILLA sell the 30-day bus passes for $50 USC each and would give him the proceeds from the bus pass sales. The anonymous female asked PADILLA for 1-pass so she could take the bus to school during the month to which PADILLA refused her request.

The anonymous female stated that she is a close acquaintance of Robert PADILLA and refused to reveal her identity out of fear of PADILLA's prior murder convictions and gang history with the Latin [K]ings. The anonymous female believes that PADILLA is on parole. The anonymous female also observed a handgun in the basement apartment. Computer revealed that PADILLA is on parole and is paroled to the address of 2727 S. Trumbull Ave. in Chicago Illinois.

The anonymous female also heard the unknown individual in the basement apartment with PADILLA ask PADILLA, 'When are you going to get rid of it.' The unknown female related that the PADILLA was being asked about the safe to which PADILLA answered, 'I know bro, I been behind on my s***.' "

¶ 29 Multiple motions to suppress the materials recovered from the execution of the search warrant, the details of which will follow, were filed, argued by the respective parties, and rejected by the trial court.

¶ 30 The case proceeded to a bench trial, where, in addition to the foregoing, Ms. Cuevas testified that photographs of the cartons of cigarettes, miscellaneous tobacco items, electronic

cigarettes, and bus cards recovered by the police from the garden apartment at 2727 South Trumbull Avenue all resembled items typically sold at Walgreens.

¶ 31    Latasha Murphy, a cash vault manager for Fifth Third Bank who oversaw incoming and outgoing deposits for Walgreens, described the manner in which currency was packaged. When a customer orders currency, the currency comes directly from the Federal Reserve bank. The currency is banded with 100 bills placed inside of each strap, regardless of denomination. The straps are made of rubber bands. The currency would then be placed in a clear plastic bag. Coins were bubble wrapped.

¶ 32    The trial court admitted certified convictions of defendant in case number 83-C-10952 for murder, armed violence, aggravated battery, attempted murder, and unlawful use of weapons, for which he was on parole, and an unrelated prior possession of a controlled substance conviction from October 9, 2008.

¶ 33    In finding defendant guilty of all charges except for possession of burglary tools and criminal damage to property, the court articulated the basis for its findings:

"The defendant—although there's no eyewitnesses, the defendant was tied to this burglary, this overnight burglary at Walgreens. And there's testimony that of the proceeds that were taken out of the Walgreens, after someone broke into the building from an adjoining building and into the manager's office, there were three safes there. And in one of the safes, according to—I think it was a Giron, Witness Giron, an agent of Walgreens, the first safe contained about $40,000 of working money. The second safe was bus cards and cigarettes. And Ms. Cuevas, from the store manager's office, testified that she viewed recovered cigarettes, and bus cards, and banded United States currency that was recovered as a result of the investigation of this case, and it was the same type of the cigarettes or the same type of cigarettes they sold. The money was banded in a fashion in which they kept their money coming from the Federal Reserve Bank. It was not loose money. It was banded for commercial distribution. And there were boxed and plastic, bubble-wrapped boxes of coins. The investigation of this matter led to the address of 2727 South Trumbull. A search warrant was executed at that place. And there was a safe, a new safe with a receipt from Sam's Club for this new safe. There was recovered hundreds of bus cards, and dozens and dozens of boxes of cigarettes, banded money, United States currency, coins, boxes of coins. And also was recovered from that location, 2727 South Trumbull, proof of residency of the defendant, indicating the first floor for that address and the basement for that address where these items were recovered from. The defendant was observed leaving from that address, getting into a gray Nissan. And he stopped a little ways away down the block from 2727 South Trumbull. And in his lap is a plastic bag containing bus cards. These proceeds from this Walgreens were unique. These were unique proceeds. And the defendant is tied—his address is tied to the recovery of these rather unique proceeds. Banded United States money with a band around it. It's not loose money. It's the kind of band that the Federal Reserve puts around its money that it distributes to merchants. Hundreds of cartons of cigarettes and bus passes. There was at least one that—the serial number on at least one of the bus cards was tied to being delivered to that Walgreens upon their request. That was from a witness that was from the transit authority, Mr. Thiry, I believe. The Court finds that the evidence in this case is just overwhelming. There is unique—first of all, unique proceeds from this burglary found to be, part of it,

- 7 -

in the defendant's lap, and the bulk of it in the defendant's residence. There's a finding of guilty as I have stated on the charges that I have stated."

¶ 34 Defendant then filed a complaint against his attorney with the Attorney Registration and Disciplinary Commission, which prompted his attorney to seek leave to withdraw as counsel. The trial court appointed the Office of the Public Defender to represent defendant on his posttrial claims of ineffective assistance of counsel. The assistant public defender (APD) was given leave to withdraw. Then private counsel, Leslie Starks, was retained to represent defendant on his posttrial motion and for sentencing. When attorney Starks died unexpectedly, the trial court reappointed the Office of the Public Defender to represent defendant.

¶ 35 Thereafter, the trial court determined that it had prematurely appointed counsel to represent defendant on his posttrial allegations of ineffective assistance of counsel and informed the defendant that it was "going to have to correct that" by making an initial inquiry into defendant's allegations. A preliminary *Krankel* inquiry followed, where defendant presented his claims and defense counsel responded to the charges (see *People v. Krankel*, 102 Ill. 2d 181 (1984)). The trial court ruled:

"And I certainly can say that this attorney filed multiple amended motions—very careful motions attacking that search warrant. And we had multiple hearing dates on that motion. Multiple. And it was about three to four dates that we heard your motion attacking Judge Burch's finding of that search warrant. And then there was a motion to quash arrest and suppress evidence. It was—I find, as the jury who presided over your—this case that counsel's work was very thorough. Very thorough. I find there was no deficiency in—now, after hearing from you and your claims, I find that there is no merit to your claims of ineffective assistance of counsel. And I will not appoint a new counsel to respond to your claims because it's trial strategy. Whatever occurs—the decision your attorney made was a matter of trial strategy in regard to each of your issues."

¶ 36 When the court indicated that trial counsel would be reinstated to complete posttrial motions, defendant chose to proceed *pro se*. He then retained a new attorney, Mr. Dennis Doherty, however Mr. Doherty determined that he had a conflict of interest and enlisted the assistance of attorney Eric Bell. Mr. Bell was only willing to represent defendant at sentencing, so the trial court appointed the Office of the Public Defender to represent defendant on his posttrial motion. Thereafter, defendant was granted leave to discharge attorney Bell, and APD Karin Talwar represented defendant on both his posttrial motion and for sentencing. On a subsequent court date when defendant moved for APD Talwar to be replaced with private appointed counsel, the trial court refused his request.

¶ 37 APD Talwar filed a combined "Motion to Reconsider/Motion for New Trial," which not only requested a new trial but additionally sought to reopen the trial proofs to admit evidence concerning a similar burglary committed at another Walgreens two weeks prior to this burglary, in which the offenders were described as black men in their twenties. The motion also sought to reopen the proofs in order to permit defendant to call his mother and sister to testify that defendant resided only in the first-floor apartment and that Mr. Nunez rented the basement apartment and to establish that defendant's mother gave him a large amount of cash the morning of his arrest to make various purchases for her. The motion also alleged that trial counsel's failure to call any of these witnesses constituted ineffective assistance of counsel. The court denied defendant's motion.

¶ 38    After a sentencing hearing, the court sentenced defendant to concurrent sentences of eight years in the Illinois Department of Corrections on the armed habitual criminal count and the burglary count.

¶ 39                                    II. ANALYSIS
¶ 40                           A. Sufficiency of the Evidence
¶ 41    In his first assignment of error, defendant alleges that the evidence was insufficient to sustain his convictions for being an armed habitual criminal and burglary. The due process clause of the fourteenth amendment to the United States Constitution requires that a defendant may not be convicted "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review on a challenge to the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). This standard applies in all cases, regardless of the nature of the evidence. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002).

¶ 42    We will not substitute our judgment for that of the trier of fact, who is charged with assessing the credibility of the witnesses and the weight to be accorded their testimony, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Hommerson*, 399 Ill. App. 3d 405, 411 (2010). A reviewing court may not retry the defendant. *People v. Rivera*, 166 Ill. 2d 279, 287 (1995). Testimony will only be found insufficient under the *Jackson* standard where the record compels the conclusion that no reasonable person could accept it beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Stated differently, a defendant's conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 43                           1. The Burglary Conviction
¶ 44    To convict defendant of burglary, the State had to establish that defendant knowingly and without authority entered a building, the property of Walgreens, located at 3045 West 26th Street in Chicago, with the intent to commit therein a theft. The evidence adduced at trial was sufficient to establish that defendant committed burglary.

¶ 45    Criminal possession may be either actual or constructive. *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002). The standard for reviewing whether the evidence is sufficient to support a criminal conviction is the same whether the evidence is direct or circumstantial. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). A defendant's exclusive and unexplained possession of recently stolen property without more is insufficient to satisfy the reasonable doubt standard. *People v. Housby*, 84 Ill. 2d 415, 423 (1981).

¶ 46    In *Housby*, the supreme court articulated a three-part test to be utilized in determining whether a defendant's exclusive and unexplained possession of recently stolen property will permit an inference that the defendant committed a burglary. *Id.* at 424. The test requires (1) a rational connection between defendant's possession of stolen property and his participation in the burglary, (2) a showing that defendant's guilt of burglary is more likely than not to flow from his unexplained possession of burglary proceeds, and (3) evidence corroborating the

defendant's guilt. *Id.* Identical evidence may be used to satisfy all three prongs of the *Housby* test. *People v. Caban*, 251 Ill. App. 3d 1030, 1033 (1993). The inference that a defendant participated in a burglary rises with the proximity in time and place to defendant's discovered possession of the stolen items. *Id.* at 1034.

¶ 47    In *Caban*, the defendant was convicted of residential burglary and theft and challenged the sufficiency of the evidence of his guilt, maintaining that the *Housby* test was not satisfied where there were insufficient facts establishing a rational connection between the defendant's possession of the stolen property and participation in the burglary. *Id.* at 1032. The court rejected the defendant's claim, concluding that a comparison of the plausibility of the defendant's explanation of events with the State's theory of the case allowed the trial court to reasonably conclude that it was more likely than not that the defendant was a participant in the burglary. *Id.* at 1034.

¶ 48    In *People v. Carter*, 197 Ill. App. 3d 1043, 1046-47 (1990), the court found that all three parts of the *Housby* test were satisfied where the defendant was apprehended in close proximity to the site of the burglary shortly after its discovery, where he gave an implausible alternative explanation, and where he was bleeding when he was apprehended by the police.

¶ 49    In *People v. Moore*, 98 Ill. App. 3d 507, 514 (1981), the court rejected the defendants' claim that the trial court improperly presumed that their possession of recently stolen property was sufficient to find them guilty of burglary. The court concluded that the *Housby* test was satisfied where the burglary was committed shortly before the defendants were found in close proximity to the site of the burglary, where they had recent unexplained and exclusive possession of proceeds from the burglary, and where their conduct tended to show consciousness of guilt. *Id.* at 511-13. The trial court's findings demonstrated "that the trial court did not blindly apply the presumption in question" but properly analyzed the evidence, thereby satisfying the requirements of *Housby*. *Id.* at 513-14.

¶ 50    Here too, the trial court's explicit findings of fact satisfied the requirements of *Housby*, where, in finding the evidence "just overwhelming," the court relied not only on evidence recovered in the basement apartment pursuant to the search warrant but, critically, on defendant's actual possession of over 100 CTA bus passes that he held on his lap in the car, moments after leaving his home. The trial court had a sufficient basis for finding the CTA bus passes in defendant's actual possession to be "unique" based on their sheer volume. While a handful of CTA bus passes might not be remarkable, the trial court could properly determine that over a hundred CTA bus passes contained in an open plastic bag were indeed unique. Of additional significance was the fact that the same bag contained approximately $1000 that was not loose but "banded."

¶ 51    The property in defendant's actual possession was but a microcosm of what was found in the basement apartment. Additional CTA bus passes, one of which was proven to originate from the burglarized Walgreens, provided additional support for the court to conclude that defendant committed the burglary. The inference was further heightened by the fact that the monies found in the safe still bore Federal Reserve packaging. That such a massive quantity of contraband matching the description of what was stolen was found just four days after the burglary also assisted in meeting the requirements of *Housby*. Additionally, we take judicial notice of the fact that defendant's residence is less than a mile from the burglarized Walgreens. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177-78 (2003); *People v. Rojas*, 359 Ill. App. 3d 392, 409 n.1 (2005).

¶ 52　　Other items recovered from the basement established a rational connection between defendant's possession of the stolen property and his participation in the burglary, making such possession more likely than not to flow from his unexplained possession of burglary proceeds. These items included a police scanner which was pre-set to the channel for the 10th District where both defendant's home and the burglarized Walgreens were located, several walkie-talkies, a Chicago police jacket, a piece of plywood bearing circular black marks that appeared to be burn marks, a double large-size acetylene tank, a large-size torch, and a large assortment of tools. The foregoing items, which could have been used to gain access to the Walgreens as well as to the contents of the safes, all established a rational connection between defendant's possession of the stolen property and his participation in the burglary, showed that defendant's guilt of burglary more likely than not flowed from his unexplained possession of burglary proceeds, and generally corroborated defendant's guilt. See *People v. Flowers*, 111 Ill. App. 3d 348, 355 (1982) (rational connection between the defendant's possession of stolen property and burglary established where he possessed tools that could have been used to make the forcible entry).

¶ 53　　Finally, while defendant urges us to reject the State's reliance on the DHS letter recovered from the first-floor apartment bearing defendant's address including the basement apartment, alleging that the State's theory of the case has changed from trial to appeal, defendant supports this claim with the inapposite case of *People v. O'Neal*, 104 Ill. 2d 399, 407 (1984). *O'Neal* involved the State taking inconsistent positions before the trial court and on appeal as to the basis for providing a self-defense instruction. This is a reasonable doubt claim, and the standard of review requires that we consider the evidence in the light most favorable to the State. *Collins*, 106 Ill. 2d at 261. The State was not required to prove that defendant lived in the basement apartment but that he constructively possessed the contraband found in the basement. Such constructive possession was established both by defendant's actual possession of items matching those found in the basement apartment and by the DHS letter.

¶ 54　　We likewise reject defendant's claim that the sex offender registration form was "more probative" of defendant's address than the DHS letter. The trier of fact was not required to accept an explanation compatible with defendant's innocence and elevate it to the status of reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009).

¶ 55　　*People v. Smith*, 2014 IL App (1st) 123094, is distinguishable. In *Smith*, no one identified the items found in the defendant's possession as items taken from the store. In the absence of any evidence connecting the items in the defendant's possession to the stolen property, the defendant's admission to possessing stolen property did not "more likely than not" flow from his possession of the stolen property *Id.* ¶ 14. In contrast, in this case, representatives from Walgreens identified the recovered items as being of the same ilk as those that were stolen. More to the point, the evidence established that one of the recovered CTA bus passes originated from the burglarized Walgreens after it was transferred there from another Walgreens.

¶ 56　　In sum, we find that the trial court properly determined that the evidence was sufficient to establish that defendant committed burglary.

¶ 57　　　　　　　　　　　2. The Armed Habitual Criminal Conviction

¶ 58　　To convict defendant of being an armed habitual criminal, the State had to establish that defendant knowingly or intentionally possessed a firearm, after having been convicted of murder under case number 83-C-10952 and possession of a controlled substance under case

number 08-CR-8090. The evidence was sufficient to establish defendant's guilt beyond a reasonable doubt of being an armed habitual criminal.

¶ 59   Criminal possession may be either actual or constructive. *Brown*, 327 Ill. App. 3d at 824. When possession is constructive, the State must prove that the defendant had knowledge of the presence of the weapon and had immediate and exclusive control over the area where the weapon was found. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings will not be disturbed unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of guilt. *People v. Luckett*, 273 Ill. App. 3d 1023, 1033 (1995). A reviewing court must allow all reasonable inferences from the record in favor of the State. *Cunningham*, 212 Ill. 2d at 280.

¶ 60   Evidence of constructive possession is often proven entirely by circumstantial evidence. *Id.* Knowledge may be established by a defendant's acts, declarations, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found. *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011). Control is established when a person has the intent and capability to maintain control and dominion over an item even if he lacks personal present dominion over it. *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992); *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Control over the area where contraband is found gives rise to an inference that the defendant possessed the contraband. *McCarter*, 339 Ill. App. 3d at 879.

¶ 61   The same evidence establishing defendant's constructive possession of proceeds from the burglary also establishes his constructive possession of the loaded blue steel revolver. That the revolver was inextricably linked to the proceeds of the burglary was made manifest by the fact that the revolver was found in the safe enclosed in a Federal Reserve bag alongside both bundles of cash that were wrapped in Federal Reserve money bands and boxed and bubble-wrapped coins. As is the case with the burglary charge, the DHS letter provided additional circumstantial evidence that defendant constructively possessed the revolver.

¶ 62   The recovery of proof of residency for Richard Nunez did not undermine the sufficiency of the evidence that established defendant's constructive possession of the revolver. "Mere access by other persons to the area where the contraband is found does not defeat constructive possession." *People v. Dismuke*, 2017 IL App (2d) 141203 (citing *People v. Scott*, 152 Ill. App. 3d 868, 871 (1987)). A person may constructively possess contraband even if that possession is joint. *People v. Spencer*, 2016 IL App (1st) 151254, ¶ 25.

¶ 63   Defendant misplaces reliance on *People v. Fernandez*, 2016 IL App (1st) 141667, and *People v. Natal*, 368 Ill. App. 3d 262 (2006), to support his claim. In *Fernandez*, no evidence connected the defendant to the address where a handgun was recovered. The court noted that evidence of residency often is demonstrated by rent receipts, utility bills, or mail. *Fernandez*, 2016 IL App (1st) 141667, ¶ 19. While the recovery of the defendant's passport established that the defendant had some connection with the residence, no evidence placed him in the residence on any date, and the fact that the weapon was concealed under a mattress undercut the inference that he had knowledge of the presence of the gun. *Id.* ¶ 22.

¶ 64   In *Natal*, in applying the *Housby* test, the court concluded that the defendant's recent possession of stolen property did not make it "more likely than not" that the defendant committed residential burglary, where there was no corroborating evidence of the defendant's guilt, where recovered fingerprint evidence did not match the defendant, and where the

defendant testified and offered a reasonable explanation for his possession of the items. 368 Ill. App. 3d at 269-71.

¶ 65 Here, the evidence established defendant's control and knowledge of the revolver where, in addition to the DHS letter, defendant actually possessed proceeds from the burglary, which mirrored the proceeds recovered from the basement apartment. The connection between the gun and the monies in the safe was clear where both bore identifiers from the Federal Reserve bank. To the extent that the recovered proof of residency left any outstanding question as to whether defendant resided in either the basement apartment, the first-floor apartment, or both, the fact remains that the evidence was sufficient to corroborate defendant's knowledge and control over the contraband contained in the basement apartment, including the revolver. See *People v. Casas*, 234 Ill. App. 3d 847, 852-53 (1992) (upholding the defendant's narcotics conviction despite a dispute at trial as to whether the defendant resided in an abandoned storefront or a rear apartment). The trier of fact was not required to accept an explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt. *Siguenza-Brito*, 235 Ill. 2d at 229.

¶ 66 Based on the foregoing, the evidence was sufficient for the trial court to find defendant guilty of being an armed habitual criminal beyond a reasonable doubt.

¶ 67 B. Ruling on Motion to Suppress

¶ 68 In his next assignment of error, defendant alleges that the trial court erroneously denied his motion to suppress evidence where (1) the complaint for search warrant failed to establish probable cause to search the garden apartment, (2) the complaint for search warrant failed to establish probable cause to search the first-floor apartment, and (3) the good-faith exception did not apply.

¶ 69 Search warrants are presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The issuance of a search warrant satisfies probable cause when the totality of facts and circumstances known to the affiant are "sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched." *People v. Griffin*, 178 Ill. 2d 65, 77 (1997). Whether probable cause exists turns on the totality of the circumstances and facts known to the officers and the court when the warrant is applied for. *People v. Manzo*, 2018 IL 122761, ¶ 29. Application of a totality-of-the-circumstances analysis requires the issuing judge to make "a practical, commonsense decision *** [of] whether there is a fair probability that contraband or evidence *** will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Hearsay is permissible so long as a substantial basis for crediting the hearsay is presented. *Id.* at 242.

¶ 70 We review a court's ruling on a motion to quash a search warrant and suppress evidence using a bifurcated standard of review. *People v. Pitts*, 2016 IL App (1st) 132205, ¶ 42. We will reverse a trial court's findings of fact only if they are against the manifest weight of the evidence and then review *de novo* the court's ultimate decision granting or denying the motion. *Id.* A reviewing court may not substitute its judgment for that of the issuing judge but must decide whether the judge had a substantial basis for concluding that probable cause existed. *People v. McCarty*, 223 Ill. 2d 109, 153 (2006). Determining whether probable cause exists is governed by commonsense considerations that are factual and practical, rather than by technical rules. *Manzo*, 2018 IL 122761, ¶ 30.

¶ 71    Determining whether probable cause supported the issuance of a search warrant begins with an examination of the sufficiency of the affidavit. "[P]robable cause means simply that the totality of the facts and circumstances within the knowledge of the affiant when the warrant was sought was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched." *Griffin*, 178 Ill. 2d at 77. A search warrant's supporting affidavit is presumptively valid. *Franks*, 438 U.S. at 171. A detached judicial officer must resolve the question of whether probable cause exists to justify issuing a warrant. *People v. Tisler*, 103 Ill. 2d 226, 236 (1984). Such inquiry turns on "the totality of the circumstances and facts known to the officers and court when the warrant is applied for." *People v. Free*, 94 Ill. 2d 378, 400 (1983). "[T]he resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to the warrants." (Internal quotation marks omitted.) *People v. Stewart*, 104 Ill. 2d 463, 477 (1984). If a complaint provides a substantial basis for the issuing judge's probable cause finding, we will affirm the trial court's denial of a defendant's motion to quash and suppress. *People v. Reyes*, 2020 IL App (2d) 170379, ¶ 49.

¶ 72    In order to properly clarify the scope of our review, we begin by providing a detailed factual account of the extensive litigation that occurred below. On April 14, 2014, defendant filed an initial motion to quash arrest and suppress evidence, which alleged that (1) the police lacked probable cause to arrest defendant and (2) the search warrant was misleading and false where there was neither a showing that the "informant" was reliable nor a description of when the informant saw the revolver. On May 22, 2014, after the parties agreed that the first part of defendant's motion required an evidentiary hearing, they proceeded to address the second part of defendant's motion. Defendant maintained that the anonymous source was not proven to be reliable and that her representations were insufficient to establish probable cause where she did not see any illegal activity. Additionally, defendant argued:

> "DEFENSE COUNSEL: The police—all the police do is they confirm that there is a Robert Padilla that lives at that apartment and he is on parole, and so all of that is information that is available from—I guess from the Illinois Department of Corrections. They could certainly say where—if a person is on parole, the police apparently have access to his parole address, but other than that—and his parole address is to the first floor and not to the garden apartment. There is no corroboration that any of these items exist in that basement apartment. There is no corroboration that Mr. Padilla actually lived in the basement apartment or went into the basement apartment or had access to the basement apartment, and so the police went to the Judge with some observations from an anonymous source that has no track record, from an anonymous source from which nothing was corroborated. There was no probable cause for the Judge to issue a warrant based on those facts."

¶ 73    Defendant admitted that probable cause could have been based on the anonymous source seeing a revolver in the apartment where he was on parole. He maintained, however, that the representation was misleading in light of a supplemental police report, which clarified that defendant had displayed the revolver to the informant on a "prior" occasion. Defendant maintained that, without this "misleading" information, the revolver would not have provided probable cause for the issuing judge to sign the warrant.

¶ 74    The State maintained that Detective Pulcanio received information from a "confidential informant" who wished to remain anonymous out of fear and that her representations

corresponded to what was taken in the burglary three days earlier. The confidential information provided defendant's name and parole status, which was verified by Detective Pulcanio. Defendant's address was 2727 South Trumbull Avenue. The State maintained that the anonymous female observed a handgun in the basement apartment on May 30. The $35,000 referenced by defendant "matched up with what was taken from the burglary," as did the bus passes and the cigarettes.

¶ 75    The court reserved ruling and allowed the parties an opportunity to submit written memoranda. That portion of the motion to suppress that was based on the legality of the arrest was continued for an evidentiary hearing.

¶ 76    Two weeks later, on June 5, 2014, defendant filed an amended motion to suppress evidence (first amended motion to suppress), in which he again maintained that he was arrested in the absence of probable cause. With respect to the search warrant, defendant alleged that the issuing judge was given no information to establish the reliability of the anonymous informant. Defendant again admitted that the police verified that defendant was on parole "at the supplied address" but now alleged that there was no probable cause to search the first-floor apartment where the complaint did not provide probable cause to believe that any contraband was located there. Defendant likened his case to that of *People v. Lenyoun*, 402 Ill. App. 3d 787 (2010).

¶ 77    The State filed a written response on July 7, 2014, maintaining that just three days after the burglary, the anonymous informant provided detailed information of what she observed in the basement apartment of 2727 South Trumbull, less than a mile from where the burglary occurred, and that her description of the contraband matched the description of the proceeds taken from Walgreens. The informant further informed the police that defendant was on parole. The State maintained that Detective Pulcanio followed up on this information and learned that defendant was in fact paroled to that address. Finally, the State argued that, even if there was not sufficient probable cause to support the issuance of the warrant, the good-faith exception applied to prevent application of the exclusionary rule.

¶ 78    Defendant filed a written reply on July 22, 2014. The reply reiterated the claims contained in the first amended motion to suppress and additionally claimed that the good-faith exception did not apply because the complaint was misleading when the contents of the complaint were compared with the contents of a supplemental police report. Specifically, in addition to relying on the argument previously made in his initial motion to suppress concerning the complaint's reference to the handgun omitting the fact that this occurred on a "a prior date," defendant provided two additional inconsistencies between the supplemental police report and the complaint for search warrant that made the good-faith exception to the exclusionary rule inapplicable. First, while the complaint referenced the fact that the offender was "possibly Hispanic," the supplemental police report did not contain this assertion and indicated that the video was too poor in quality to even determine the make and model of the car depicted therein. Second, defendant maintained that the supplemental police report did not state that the Walgreens manager's office contained over a hundred packs of cigarettes prior to the burglary.

¶ 79    On August 28, 2014,[2] after again agreeing that a future evidentiary hearing was required to address that portion of defendant's amended motion that challenged the legality of his arrest, the parties resumed litigating the sufficiency of the warrant. Defendant restated the arguments

_____

[2]The report of proceedings misidentifies the date of this hearing. The remainder of the record establishes that the correct date for this hearing is August 28, 2014.

that he made at the May 22 hearing, again conceding that the presence of a gun in the apartment of an individual who is on parole would provide a sufficient basis for the issuance of a warrant. Defendant now alleged, however, that inconsistencies between the representations contained in the complaint for search warrant and the supplemental police report required an evidentiary hearing and should be decided separately from any issues concerning the reliability of the anonymous tip.

¶ 80    The State noted that defendant's request for a hearing on these matters went beyond what was alleged in the motion, where the motion neither requested a *Franks* hearing nor contained an affidavit supporting such a request. The State maintained that the court could rule on that portion of defendant's motion that attacked the four corners of the search warrant. The court decided that it would not rule on the isolated issue of the reliability of the anonymous tip because to do so "just makes no sense." The case was continued for defendant to file a motion in accordance with *Franks*, 438 U.S. 154, and for a determination of whether a *Franks* hearing should be ordered.

¶ 81    On September 11, 2014, defendant filed a second amended motion to suppress, which comprised three parts. Section A, titled "Franks Motion," contained the three claims previously set out in the "good-faith exception" reply to the State's response to his first amended motion to suppress. Defendant now maintained that the three referenced inconsistencies were tantamount to false representations that required a *Franks* hearing. Section B reiterated the charge that the anonymous tip was not sufficiently reliable to establish probable cause for the issuance of the search warrant. Section C restated defendant's challenge to the legality of his arrest. Abandoned was the claim that the complaint for search warrant failed to provide probable cause to search the first-floor apartment in the absence of any basis for believing that contraband would be found there.

¶ 82    On January 22, 2015,[3] the parties litigated section A of the second amended motion to suppress. Defendant sought a *Franks* hearing based on his claim that the three inconsistencies between the complaint for search warrant and a supplemental police report established that the complaint was misleading. In response, the State addressed all three contentions. The State noted that, while the supplemental police report contained no reference to the stolen cigarettes, the original incident report specifically referenced the cigarettes that were stolen from the manager's office. The description of the offender being "possibly Hispanic" was neither misleading nor a deliberate falsehood, where the officer was simply relating how the contents of the video appeared to him. With respect to the complaint's failure to specify that the gun was seen on a "prior" occasion, such omission did not rise to the level of reckless disregard for the truth or constitute a deliberate falsehood. Finally the prosecutor maintained that, even if all of these allegations were excised from the complaint, the remainder of the complaint contained ample probable cause for the issuance of the warrant.

¶ 83    The court ruled as follows:

"THE COURT: I have to agree with the prosecutor on this. This request for a Franks hearing here, Counsel, it just doesn't hold up to reckless disregard for the truth, you've not made that showing here on these three items that you set forth that may have been misleading to the judge who issued the search warrant. The state's attorney has completely handled two of these items, the hundreds of packs of cigarettes that's in the

---

[3]This report of proceedings contains an incorrect date of January 22, 2013.

- 16 -

search warrant, and that's supported by the case report and the complaint. And as to the 'possibly Hispanic,' the officers set forth—the video, he was referencing the video in which you indicate his own report shows it was a poor quality, and he says 'possibly Hispanic,' that's just an opinion and in no way—whoever was on that video at that time of morning at that premise, it wasn't even necessary, but it certainly wasn't the cause—the officer was being recklessly disregarding the truth, the truth is that there was a person outside of this premise [*sic*] here at three to seven in the morning. Now, as to the weapon, there's information in the search warrant that—complaint, that she had seen a gun in the defendant's apartment, that garden apartment. Leaving out 'on a prior date,' I do not find that to be reckless disregard for the truth, Counsel, and that's the standard that you needed to have met on these three items that you set forth as the basis for your request for [suppression of] a search warrant. You fell short of making that substantial showing, and there will not be a Franks hearing on the four corners of the search warrant."

¶ 84        The parties returned to court on January 29, 2015. In addition to seeking a ruling on section B of his second amended motion to suppress, defendant now orally resurrected his previously abandoned claim that the search warrant was defective because there was no probable cause to search the first-floor apartment. When asked to respond to this charge, the State replied that it was surprised by this argument because the second amended motion to suppress did not contain this allegation. Defendant admitted that he did not raise this claim in his second amended motion to suppress.

¶ 85        Nevertheless, in addition to responding the claim raised in section B of the second amended motion to suppress, the State agreed to respond to the newly added claim that no probable cause existed to search the first-floor apartment. The State maintained that the complaint for search warrant indicated that 2727 South Trumbull Avenue was a two-story building with a garden apartment, a back fence, and a single entrance door to the basement and first floor apartments. Judge Burch could properly determine that there was probable cause to search both units where the complaint stated that there was a single entrance door to both apartments. In denying both the claim raised in section B and the newly added claim that probable cause did not support a search of the first-floor apartment, the trial court ruled as follows:

        "All right. As to both the written and the oral amendment today, that is denied. The Court finds that the items that's referenced in the complaint is set forth in the search warrant, and that's [incorporated] by reference.

        Gates is exactly on point, and there was extensive corroboration of the informant's information by these—the affiant officer here and the law enforcement. Even defendant's background was determined because of the information that the—that informant provided. His status as a parolee. So that part of your amended motion is denied to quash arrest and to suppress the evidence."

¶ 86        With this factual backdrop in place, we make the following observations as to what is, and what is not properly before us. Defendant does not challenge the court's denial of his motion to suppress evidence based on the alleged illegality of his arrest. What then remains are the rulings that defendant is challenging on appeal. We review the trial court's denial of defendant's motion to suppress evidence obtained pursuant to the search warrant where defendant claimed that the complaint failed to provide ample probable cause for the issuance of a warrant to search the basement and first-floor apartments, as well as his claim that the

good-faith exception does not apply to excuse the alleged lack of probable cause in the complaint for search warrant and related alternative request that we remand this matter for a *Franks* hearing. We consider each argument in turn.

¶ 87                              1. Probable Cause to Search the Garden Apartment

¶ 88        The question of whether the complaint for search warrant was supported by probable cause to search the basement apartment was raised in all three of defendant's motions to suppress evidence. As our detailed discussion establishes, the anonymous informant placed defendant and another individual in the garden apartment three days after the burglary, less than a mile from the site of the burglary, counting large quantities of cash. The anonymous informant saw large quantities of CTA bus passes that she intended to help defendant sell. She observed hundreds of packs of cigarettes and a safe, which defendant admitted opening with the use of a blow torch. Defendant expressed his intent to quickly dispose of the safe. The anonymous informant heard the number 35,000, a number close to the approximately $40,000 that was stolen from the safe, along with the safe as well. The anonymous informant also told Detective Pulcanio that defendant had been convicted of murder, had a gang history with the Latin Kings, and was on parole. Additionally, the anonymous informant observed a handgun in the basement apartment in defendant's presence. Detective Pulcanio independently verified that defendant was indeed on parole and that his address was 2727 South Trumbull Avenue.

¶ 89        The contents of the complaint for search warrant were sufficient to establish probable cause for the issuance of a warrant to search the basement apartment.

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

The reviewing court may not substitute its judgment for that of the issuing magistrate but must merely decide whether the magistrate had a substantial basis for finding that probable cause existed. *Manzo*, 2018 IL 122761, ¶ 31.

¶ 90        An uncorroborated anonymous tip alone is insufficient to establish probable cause. *People v. Burns*, 2016 IL 118973, ¶ 77. In considering whether information provided by an anonymous informant is sufficient to support probable cause, the reliability of the tip hinges on the existence of corroborative details observed by the police. *People v. Smulik*, 2012 IL App (2d) 110110, ¶ 8. "The extent of details contained in a complaint for search warrant matters." *People v. Bryant*, 389 Ill. App. 3d 500, 521 (2009).

¶ 91        Here, the reliability of the anonymous tip was fully corroborated when Detective Pulcanio verified both that defendant was on parole and that he was paroled to the address provided by the anonymous informant. Defendant's verified parole status and the anonymous informant's viewing of obvious contraband, including a handgun in the basement apartment, was sufficient, standing alone, to establish probable cause to search the garden apartment. While the State fails to make this precise argument on appeal, during litigation of the motions to suppress, trial counsel repeatedly admitted that the law permits the issuance of a search warrant for an individual who is on parole and is alleged to possess a firearm, and the trial judge specifically referenced defendant's confirmed parole status when issuing her rulings. Additionally, we can

affirm the trial court's ruling on a motion to suppress on any basis appearing in the record. *People v. Hood*, 2019 IL App (1st) 162194, ¶ 39.

¶ 92    In *People v. Wilson*, 228 Ill. 2d 35, 52 (2008), the supreme court upheld the warrantless search of the defendant's bedroom by police officers, where the defendant was on parole and the defendant's parole officer received an anonymous claim that defendant had a gun. The court held: "[W]e find that any 'special protection' afforded to [the] defendant's residence was lost when he became a parolee and agreed to consent to a search of his residence ***." *Id.*

¶ 93    In *People v. Johnson*, 2020 IL App (1st) 172987, the court upheld a warrantless parole compliance check of the defendant's residence by a team of parole agents and police officers, which included searching for both first-class mail and property that belonged to the defendant in order to verify that he actually lived at the apartment. When the defendant was unable to provide the requested documentation establishing his residency, a police officer broke a lock on a bedroom door, and a subsequent search of the room revealed a gun, ammunition, and drugs. *Id.* ¶¶ 7-9.

¶ 94    Relying on *Wilson*, the court noted that parolees who have signed a mandatory supervised release (MSR) agreement that has a search condition have a reduced expectation of privacy such that standard fourth amendment protections are inapplicable to them. *Id.* ¶ 35. The court concluded that the defendant's motion to suppress evidence was properly denied. *Id.* ¶ 39.

¶ 95    Here, it stands as an uncontroverted fact that defendant was on parole at the time that Detective Pulcanio applied for the issuance of a search warrant. Where an anonymously placed call to a parole officer alleging that the defendant possessed a gun was sufficient to permit a warrantless search in *Wilson*, the anonymous call in this case most assuredly was sufficient to provide probable cause for the issuance of a search warrant for not only the garden apartment but, as will be discussed shortly, the first-floor apartment too.

¶ 96    Further support for our conclusion is found in *People v. Cooke*, 299 Ill. App. 3d 273 (1998). In *Cooke*, the defendant alleged that the affidavit in support of the search warrant lacked sufficient corroboration of the informant's veracity or basis of knowledge. *Id.* at 279. The anonymous informant had informed an officer that the informant saw a "long gun" located within the defendant's residence and that the defendant was known to carry a pistol on his person. *Id.* at 276. The officer confirmed that the defendant was a convicted felon and did not have a valid Firearm Owner's Identification card. *Id.*

¶ 97    The trial court granted the defendant's motion to suppress, finding that the affidavit failed to establish the informant's reliability. *Id.* at 276-77. In reversing the trial court, the appellate court noted that an issuing judge may draw reasonable inferences from the information supplied in the complaint for search warrant. *Id.* at 278. The informant's lack of knowledge that the defendant was a convicted felon did not affect the validity of the affidavit. *Id.* at 279. Apropos of the claim raised in this case, the court held: "To get a search warrant, all that had to be disclosed was that defendant was at this location, had actual possession of a weapon, and was a felon." *Id.*; see *People v. Kornegay*, 2014 IL App (1st) 122573, ¶ 48 (rejecting the defendant's claim of ineffective assistance of counsel for failure to move to quash a warrantless search where the defendant was on MSR and had a greatly reduced expectation of privacy).

¶ 98    Parole status aside, the plethora of details provided by the anonymous informant established sufficient indicia of probable cause to grant the issuance of the search warrant. The money, CTA bus passes, and cigarettes were of the same ilk as those stolen from the Walgreens. Additionally, the anonymous informant observed a safe, which defendant admitted

both blow-torching open and needing to dispose of in a timely fashion. The number 35,000 roughly matched the estimated $40,000 value of the stolen money that was contained in that same stolen safe. Put simply, overwhelming probable cause supported the issuance of the search warrant.

¶ 99 *People v. Pruitte*, 2019 IL App (3d) 180366, does not alter our conclusion. In *Pruitte*, the complaint for search warrant contained no probable cause allegations connecting the searched residence to the crimes alleged in the complaint, where the complaint neither alleged that the John Doe informant was reliable nor established that the police conducted any surveillance on the residence at issue. *Id.* ¶ 22. The complaint contained no basis for finding the informant reliable, a failing that was further exacerbated by the fact that the informant had multiple prior arrests for crimes of dishonesty. *Id.* ¶ 26.

¶ 100 In conclusion, we find that the complaint for search warrant provided probable cause for the issuance of a search warrant for the basement apartment.

¶ 101                    2. Search of the First-Floor Apartment

¶ 102 Defendant also alleges that the complaint was insufficient to establish probable cause to search the first-floor apartment. As was previously discussed, this claim was first raised in defendant's first amended motion to suppress evidence, was not argued at the hearing on that motion, and was later abandoned in defendant's second amended motion, but was orally resurrected on January 29, 2015, when it was argued by the parties, despite the State's expressed surprise and defendant's admission that the claim was not included in his second amended motion to suppress. The State argued:

> "Judge, if you read the complaint for search warrant, it indicates that it's a two-story building with a garden apartment and back fence with a single entrance door, basement and first floor, which is the area that is on the search warrant that is asking to be—seeking to be searched by the officers.
>
> Judge Burch had the opportunity to look at both complaint for search warrant and the search warrant; and based on what's contained inside the search warrant and the complaint for search warrant determined that there was probable cause to search based on the fact that there was a single entrance door to the basement and first floor of this residence at 2727 South Trumbull."

¶ 103 Defendant now indirectly attacks the State's reliance on what was never challenged in any of defendant's multiple motions to suppress evidence: the complaint's assertion that 2727 South Trumbull Avenue had a single entrance door to the basement and first-floor apartments. Defendant alleges that there is "no question that the garden apartment and the first-floor apartment were separate residences with separate entrances." While we agree that it was undisputed that the first-floor and basement apartments were separate residences, the same cannot be said of the assertion that there were "separate entrances."

¶ 104 In this regard, we note that defendant's factual assertion relies on trial testimony, which did establish that there was not a single entrance to the basement and first floor of the house. We find that this trial testimony is not properly relied on to now attack either the trial court's denial of defendant's claim or the issuing judge's reliance on the four corners of the complaint in issuing the warrant where defendant never raised this claim before or after the inconsistency was revealed at trial. Notably, defendant never sought reconsideration of the trial court's ruling

on this precise basis, not even in his "Amended Motion to Reconsider/Motion for New Trial." Where defendant has neither acknowledged this procedural default nor offered any excuse for it, we decline to consider this inconsistency later revealed at trial as a basis for considering the complaint lacking in probable cause. *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 38.

¶ 105   Single or multiple entrances aside, it was and remains uncontested that defendant resided in the first-floor apartment. Not only did defense counsel repeatedly affirmatively state this to be true, but defendant has consistently maintained this position, up to and including posttrial motions, where his "Amended Motion to Reconsider/Motion for New Trial" contains multiple exhibits, including a signed "Illinois Department of Corrections Reporting Instructions" form and a signed sex offender registration form that both list defendant's address as "2727 South Trumbull, 1st Floor."

¶ 106   Where defendant was on parole, resided in the first-floor apartment at 2727 South Trumbull Avenue, and was seen in the basement apartment of the same address in possession of and in the presence of contraband, including a gun, under *Wilson*, *Johnson*, and *Cook*, probable cause existed to search the first-floor apartment as well as the basement apartment.

¶ 107   *Lenyoun*, 402 Ill. App. 3d 787, is distinguishable. In *Lenyoun*, an officer applied for a successive search warrant for the defendant's home two hours after the execution of an initial warrant did not result in the recovery of contraband on the defendant's person or in his car. *Id.* at 794-95. In upholding the trial court's granting of the defendant's motion to quash the search warrant, the court held that "[m]ore than the commission of a crime on the street while in a vehicle is required to justify opening up the defendant's home to a search." *Id.* at 797.

¶ 108   *People v. Martin*, 70 Ill. App. 3d 36 (1979), also fails to support defendant's claim that an insufficient nexus existed between his alleged criminal conduct and the first-floor apartment in this case. *Martin* involved the issuance of a search warrant for two apartments on the second floor of a two-story house based on the odor of cannabis. *Id.* at 37. The trial court granted the defendant's motion to quash the warrant, and the appellate court affirmed, finding that the trial court properly determined that probable cause did not exist for the issuance of the warrant. *Id.* at 38.

¶ 109   Nor is defendant's claim supported by *Manzo*, 2018 IL 122761. In *Manzo*, the evidence only established that the named target of the search warrant used a car registered to the defendant's residence to conduct a drug transaction and was seen leaving the defendant's house while setting up another drug transaction. *Id.* ¶ 39. While such evidence created an inference connecting the defendant's car to the sale of drugs, it did not connect the defendant's residence to the illegal activity. *Id.* ¶ 41. The court concluded that the complaint for search warrant contained no facts to establish or infer that a drug supply or other tools of drug dealing might be found at the defendant's home, thereby failing to supply the necessary nexus between the defendant's home and the evidence sought in the complaint. *Id.*

¶ 110   In conclusion, we find that the complaint for search warrant provided probable cause for the issuance of a search warrant for the first-floor apartment.

¶ 111                      3. Good-Faith Exception

¶ 112   Next, defendant maintains that the good-faith exception to the exclusionary rule does not apply in this case. We agree with the State that we need not reach this issue where we find that the search warrant, in this case, was based on sufficient probable cause to authorize its issuance.

*People v. Holmes*, 2017 IL 120407, ¶ 39. "The *Leon* good-faith exception arises only *after* a court determines that the search warrant at issue was improperly issued for lack of probable cause. If the search warrant was properly issued based upon a showing of probable cause, the good faith of the officers under *Leon* in presenting their sworn testimony to the issuing judge is never an issue." (Emphasis in original.) *Bryant*, 389 Ill. App. 3d at 537.

¶ 113    Finally, we acknowledge defendant's alternative request that we remand this matter for a *Franks* hearing. Defendant's opening brief did not present a freestanding claim of error based on the trial court's denial of section A of his second amended motion to suppress, which sought a *Franks* hearing. Instead, defendant relied on what he characterized as "misleading information in the application for a warrant" as an additional "reason militating against the application of the good faith exception to suppression." While we have determined that review of defendant's good-faith argument is not warranted where the search warrant was supported by probable cause, nevertheless, we consider defendant's alternative request that we remand this matter for a *Franks* hearing.

¶ 114    In *Franks*, 438 U.S. 154, the United States Supreme Court provided defendants a right under limited circumstances to a hearing that challenges the veracity of an affidavit supporting a search warrant. *People v. Voss*, 2014 IL App (1st) 122014, ¶ 16. The purpose of a *Franks* hearing is to provide a meaningful but limited deterrence of and protection against perjurious warrant applications. *People v. Lucente*, 116 Ill. 2d 133, 150 (1987). There is a presumption of validity with respect to a search warrant's supporting affidavit. A defendant will be granted an evidentiary hearing if he makes a substantial preliminary showing that a false statement, necessary for the finding of probable cause, was knowingly or intentionally included in the affidavit or with reckless disregard for the truth. *Franks*, 438 U.S. at 171. In turn, "reckless disregard for the truth" requires proof that the affiant entertained serious doubts as to the truth of the allegations in the affidavit, or proof of circumstances evincing obvious reasons to doubt the veracity of the allegations. *People v. Creal*, 391 Ill. App. 3d 937, 944 (2009).

¶ 115    To make a substantial preliminary showing, defendant must meet several conditions, including (1) defendant's attack "must be more than conclusory and must be supported by more than a mere desire to cross-examine"; (2) defendant must provide "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof"; (3) the allegations must "point out specifically the portion of the warrant affidavit that is claimed to be false"; and (4) defendant must furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses ***, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. The defendant's burden for the preliminary showing lies somewhere between mere denials and proof by a preponderance. *Lucente*, 116 Ill. 2d at 152.

¶ 116    The review of a trial court's ruling on a motion for a *Franks* hearing is *de novo*. *People v. Chambers*, 2016 IL 117911, ¶ 79. We find that defendant failed to make a substantial preliminary showing that the complaint for search warrant contained deliberate falsehoods or allegations indicative of a reckless disregard for the truth. The trial court's rejection of defendant's request for a *Franks* hearing was supported by the following: (1) the hundreds of packages of cigarettes referenced in the complaint for search warrant were also referenced in the original case report, (2) the description of the offender as "possibly Hispanic" did not indicate a reckless disregard for the truth and was unnecessary to the finding of probable cause, and (3) the failure of the complaint for search warrant to specify that the weapon was observed on a "prior date" did not establish a deliberate falsehood or reckless disregard for the truth.

¶ 117 We conclude that defendant failed to make a substantial preliminary showing that a false statement necessary for a finding of probable cause was made with reckless or intentional disregard for the truth. As such, we reject defendant's request that we remand this matter for a *Franks* hearing.

¶ 118 C. Hearsay

¶ 119 Defendant next alleges that the DHS envelope containing defendant's address was improperly admitted in evidence at trial where it constituted inadmissible hearsay. The parties disagree as to the correct standard of review. "[The] proper standard of review cannot be articulated without first examining the substantive and procedural backdrop against which the appealed order or ruling arose." *People v. Coleman*, 183 Ill. 2d 366, 378 (1998). In deciding the correct standard of review, we consider whether the question concerns a pure question of law or a question of fact and the degree to which the trial court must assess credibility, weigh facts, and draw inferences. *People v. Johnson*, 206 Ill. 2d 348, 360 (2002).

¶ 120 Defendant maintains that the issue is a pure question of law, requiring this court to determine whether a letter containing a defendant's address is properly regarded as hearsay. To the extent that we are called upon to determine the pure legal question of whether a letter addressed to a defendant is hearsay, we agree with defendant that such question is properly reviewed *de novo*. *Johnson*, 206 Ill. 2d at 359; *People v. Sundling*, 2012 IL App (2d) 070455-B.

¶ 121 Under the Illinois Rules of Evidence, hearsay refers to certain out of court statements. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). A "statement" is defined as (1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion. Ill. R. Evid. 801(a) (eff. Oct. 15, 2015). Defendant alleges that the DHS letter constituted inadmissible hearsay but concedes that this issue was forfeited where not raised in defendant's posttrial motion. He requests that we review this claim for plain error or, in the alternative, as a claim of ineffective assistance of counsel.

¶ 122 A defendant who fails to preserve an issue in a posttrial motion forfeits review of such issue unless he can establish plain error. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Under the plain error doctrine, we may consider a forfeited claim when

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 123 Here, we find no clear or obvious error. In so concluding, we adopt the thoughtful and well-reasoned analysis set forth in *People v. Neal*, 2020 IL App (4th) 170869, ¶¶ 30-34. In *Neal*, the defendant claimed that he received ineffective assistance of counsel where his attorney failed to object to the introduction of a phone bill and an unopened envelope from American Family Insurance that bore his name and address. *Id.* ¶ 33. The defendant alleged that these documents constituted inadmissible hearsay and that he was denied his right to the effective assistance of counsel where his attorney failed to object to their admission and where the documents were used to prove his constructive possession of drugs. *Id.* ¶¶ 70-71.

¶ 124     After engaging in an exhaustive analysis that considered the Federal Rules of Evidence, the Illinois Rules of Evidence, state cases, federal cases, and analyses by legal scholars and commentators, the court held, "as a matter of first impression in Illinois, that these documents are not hearsay." *Id.* ¶ 72.

¶ 125     We believe that *Neal* was correctly decided. Additionally, we reject defendant's claim that the holding of the court in *Neal* should not apply to the facts of this case because the documents in *Neal* were used to establish defendant's residency at the location where the documents were found, whereas the DHS letter in this case was used to establish defendant's access to and control of the basement apartment. The reasoning utilized in *Neal* did not depend on the place to be searched but, rather, on the court's conclusion that an implied assertion of fact contained within mail and other documents is, plain and simple, not hearsay. That conclusion applies with full force and effect to the facts of this case and is not tempered in any way because the proof of residency was used to establish defendant's constructive possession of items found in the basement apartment.

¶ 126     In the absence of any error in the introduction of the DHS letter, defendant has failed to establish either plain error or ineffective assistance of counsel.

¶ 127                         D. Ineffective Assistance of Counsel

¶ 128     Defendant's final contention is that trial counsel was ineffective for failing to call his mother and sister to testify that defendant lived in the first-floor apartment of 2727 South Trumbull Avenue, while Richard Nunez rented out the basement apartment, and to present evidence that another burglary was committed two weeks earlier at a different Walgreens by two individuals believed to be black men in their twenties.

¶ 129     Defendant maintains that our standard of review is *de novo* because, "[h]ere there was no evidentiary hearing as the claims were dismissed in a quasi-*Krankel* hearing." The State does not take a contrary position. We, however, reject defendant's request for *de novo* review where we find defendant's request to be ill-founded.

¶ 130     As a starting point, defendant entirely fails to acknowledge that the claims raised on appeal were raised in his "Amended Motion to Reconsider/Motion for New Trial" and rejected by the trial court. In general, a trial court's ruling on a motion for new trial will not be reversed absent an abuse of discretion. *People v. Wilmer*, 396 Ill. App. 3d 175, 181 (2009). When a posttrial allegation of ineffective assistance of counsel is made, however, a trial court's ruling on the merits of such claim will not be reversed unless it is shown to be manifestly erroneous. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25. "Manifest error" is error that is clearly plain, evident, and indisputable. *Id.*

¶ 131     Moreover, while characterizing the trial court's review of defendant's *pro se* ineffective assistance of counsel claims as a "quasi-*Krankel* hearing," defendant relies, in part, on trial counsel's responses to claims raised at that preliminary *Krankel* inquiry to support his claim of ineffective assistance of counsel on appeal. Defendant fails to acknowledge, however, that his *pro se* claims of ineffective assistance of counsel were not the same claims raised in his amended motion for new trial.

¶ 132     At the *Krankel* inquiry, defendant told the court that he wanted trial counsel to call witnesses, specifically, his parole agent to testify regarding his residency. Trial counsel replied:

"Judge, there was never any evidence that Mr. Padilla lived in that basement apartment; that it was not necessary, I felt, to bring in a parole agent to testify with regard to Mr. Padilla's address. His belongings were found on the first floor. I think there was mail that showed that he was on the—that he lived on the first floor. Beyond that, I don't know if there's going to be any damaging testimony from his parole agent with regard to Mr. Padilla.

The other person that Mr. Padilla wanted me to call was the person that we're actually pointing the finger at. And then I felt it would diminish our credibility in pointing the finger at this third person whose identification was found in the basement. So I did not seek out that person to call as a witness."

¶ 133　Defendant then complained that trial counsel did not call the person who was driving the car when he was arrested. Trial counsel replied: "I believe if she would have testified, additional evidence could have been brought in by the State that would have been very damaging."

¶ 134　The court ruled:

"All right. Anything else, Mr. Padilla? I actually could have decided the merits of your claim without even bringing Counsel in under Illinois versus Moore. I think that's 2003 when People [v.] Moore—that's actually under People v. Moore. It's a 2003 decision, a progeny of the Krankel decision. That the Court can decide your claim of ineffective assistance of counsel without even any inquiry from you or from counsel as to those claims and from the Court's own experience presiding over the trial and all of the pretrial motions that were heard. And I certainly can say that this attorney filed multiple amended motions—very careful motions to attacking that search warrant. And we had multiple hearing dates on that motion. Multiple. And it was about three to four dates that we heard your motion attacking Judge Burch's finding of that search warrant. And then there was a motion to quash arrest and suppress evidence. It was—I find, as the jury who presided over your—this case that counsel's work was very thorough. Very thorough. I find there was no deficiency in—now, after hearing from you and your claims, I find that there is no merit to your claims of ineffective assistance of counsel. And I will not appoint a new counsel to respond to your claims because it's trial strategy. Whatever occurs—the decision your attorney made was a matter of trial strategy in regard to each of your issues."

¶ 135　Where defendant did not allege that counsel was ineffective for failing to call his family members as witnesses or for failing to present evidence pertaining to the burglary at the other Walgreens, we do not believe that it is proper for defendant to bootstrap counsel's responses to allegations different from those that were subsequently raised to support his claim of ineffective assistance, where counsel was never confronted with these alternate contentions of ineffective assistance of counsel.

¶ 136　Thus, we now review the trial court's rejection of defendant's posttrial claims of ineffective assistance of counsel for manifest error. Under the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668, 685 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525 (1984), posttrial counsel had to establish both that trial counsel's performance was objectively unreasonable under prevailing professional norms and a reasonable probability that, but for the unprofessional performance, the outcome would have differed. *People v. Cherry*, 2016 IL 118728, ¶ 24.

¶ 137    To establish deficient representation, defendant must overcome the strong presumption that the challenged inaction might have been the result of sound trial strategy. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). To establish prejudice, defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). If a claim can be disposed of based on an insufficient showing of prejudice, a reviewing court need not consider whether counsel's performance was deficient. *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 138    After hearing arguments on defendant's amended motion to reconsider/motion for new trial, the trial court ruled:

> "The motion is denied all of these, the proceeds, much of the proceeds were on defendant's lap on the date of his arrest just having left 2727 Trumbull. It was right there in his lap. He had a Walgreen's bag in his lap and numerous CTA bus passes, money, cigarettes. As I recall, one, at least one of the CTA bus passes were, that was found on him, in his lap, were as the trial evidence showed that it did come from the Walgreen's originating at the Walgreen's on 47th Street and sometimes they would transfer bus passes and cigarettes, et cetera, et cetera, over to another Walgreen's when they are short, and that particular bus pass was transferred from the Walgreen's on 47th Street to the one on 26th Street, the site of this particular burglary. Taking together, all of the proceeds that were in his lap—they were all not packaged in such a way that they were for personal use. Certainly, there is nothing criminal about owning a bus pass or cigarettes or having money on you—but these were—the uniqueness of all of these products, of these items that were taken as a result of this burglary is that the money was banded, strapped up, different denominations, hundreds and hundreds of dollars as they do in the Federal Reserve Bank. And this was testified to in the trial. The same with the cigarettes and all of the other proceeds. The coins were in the—the metal money—the coins were in all these sleeves that come in from a source that are not for personal use, but for use by these commercial establishments that banks take this money to. And the same for the CTA passes. They were all banded and for use by a commercial establishment. The defendant was seen on tape with or at the time near the time of offense buying a safe. There was a receipt of that. The evidence was overwhelming. It wasn't circumstantial. It was beyond circumstantial in terms of proof beyond a reasonable doubt. It wasn't coincidence. That is what I am trying to say. It certainly was not coincidental. The motion for reconsideration and new trial is denied. I've already stated. Now, we have a PSI. Any corrections that need to be made?"

¶ 139    The trial judge, as the trier of fact, stood in the best position to judge defendant's claims of ineffective assistance of counsel. The trial court appears to us to have done precisely what our supreme court has advised to be the proper course of action when the circumstances warrant it by going straight to the second prong of *Strickland* to decide whether defendant was denied the ineffective assistance of counsel. *People v. Pulliam*, 206 Ill. 2d 218, 249 (2002). Subsumed within the trial court's denial of defendant's amended posttrial motion was a rejection of defendant's ineffective assistance of counsel claim, again, the identical claim now being raised on appeal. Defendant has failed to establish that the trial court's ruling was manifestly erroneous.

¶ 140    We agree with the trial court's conclusion that the evidence in this case was overwhelming. At best, the proposed testimony of defendant's mother and sister would have been cumulative

to other evidence that established that defendant resided in the first-floor apartment and that identification for a person by the name of Richard Nunez was recovered from the basement apartment. The proposed testimony would not have altered the fact that the DHS letter and defendant's actual possession of stolen property matching property recovered from the basement apartment established his constructive possession of the contraband recovered from the basement.

¶ 141    Even if we assume that trial counsel could have presented some basis for introducing evidence that two black men in their twenties were suspected of committing a burglary of another Walgreens two weeks earlier, we likewise do not believe that such evidence would call into question the propriety of the trial court's denial of his amended posttrial motion. The trial court could properly determine, based on the overwhelming evidence of defendant's guilt, that this evidence would not have altered the outcome of defendant's trial.

¶ 142    In conclusion, the trial court's denial of defendant's posttrial claim of ineffective assistance of counsel was not manifestly erroneous.

¶ 143                        III. CONCLUSION

¶ 144    For the foregoing reasons, we affirm defendant's convictions and sentence for being an armed habitual criminal and burglary.

¶ 145    Affirmed.